HAMILTON (KERR v.). See Case No. 7,-731.

---

## Case No. 5,984.

### HAMILTON v. KINGSBURY et al.

[15 Blatchf. 64; 3 Ban. & A. 346; 14 O. G. 448.] [1]

Circuit Court, N. D. New York. July 12, 1878.

PATENT—LICENSE TO USE AND SELL — EFFECT — ASSIGNABILITY.

By a license under letters patent H. granted to L. and to his "legal representatives" "the full and exclusive right to use and to sell to be used" the invention, as applied to a specified construction, "as secured by the said letters patent, for, to and in the state of New York, I excepting and reserving the right to manufacture the said invention for myself and legal representatives:" *Held*, that, by the license, L. acquired the right to manufacture the invention for such sale or use, and that the license was assignable by L.

[Cited in Adams v. Howard, 22 Fed. 657.]

[Suit by Susan Hamilton against Gilbert J. Kingsbury and George T. Davis for an alleged infringement. Heard upon bill and plea.]

William H. Bright, for plaintiff.
Henry R. Selden, for defendants.

BLATCHFORD, Circuit Judge. This suit is founded on letters patent of the United States [No. 51,310] granted to Palmer Hamilton December 5th, 1865, for "improvements in saw-mills," of which the plaintiff claims to be the owner. The defendants interpose a plea to the bill. The matters set up in the plea are as follows: Palmer Hamilton, on the 1st of August, 1866, assigned to Milton A. Hamilton all the right, title and interest of Palmer Hamilton in the invention covered by the patent "as it is or may be applied to mulay or single upright mill-saws," for the whole of the United States. Milton A. Hamilton, on the 27th of August, 1866, assigned to Clinton A. Lombard and John Thompson, "and to their legal representatives," for the consideration of $3,000, "the full and exclusive right to use and to sell to be used the said saw-hangings" (the invention being previously in the assignment stated to be known as "Hamilton's oscillating and reciprocating saw-hangings,") "as they are or may be applied to mulay or single upright mill-saws, as secured by

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge: reprinted in 3 Ban. & A. 346; and here republished by permission.]

the said letters patent, for and in the state of New York, I excepting and reserving the right to manufacture the said invention for myself and legal representatives." Lombard and Thompson, on the 29th of April, 1868, for the consideration of $10,000, assigned to Robert P. Russell, Montgomery Reese and the firm of Strong & Woodbury, in equal shares of one-third each, all the right, title and interest of Lombard and Thompson in the invention patented, for, to and in the state of New York. Reese, on the 15th of July, 1868, in consideration of $1,200, assigned to Russell and the firm of Strong & Woodbury, in equal shares of one-half to each, all the right, title and interest of Reese in the invention patented, for, to and in the state of New York. Strong & Woodbury, on the 10th of December, 1869, in consideration of $1,000, assigned to the defendants all the right, title and interest of Strong & Woodbury in the invention patented, for the state of New York, except the counties of Cayuga and Franklin. The defendants did not make or sell any machine containing the patented invention, prior to the assignment from Strong & Woodbury to them, except that, within a year prior to that time, they made for Strong & Woodbury, and at their request, a small number of said machines, and, since said assignment, they have not made, used or sold any machine containing said invention, except that they have made and sold mulay and single upright mill-saws containing said invention, within the state of New York other than in the counties of Cayuga and Franklin in that state. The bill sets up an assignment by Palmer Hamilton to Milton A. Hamilton, on the 1st of August, 1866, of the entire patent, and an assignment by Milton A. Hamilton to Palmer Hamilton, on the 12th of March, 1867, of the entire patent, and an assignment by Palmer Hamilton to the plaintiff, on the 18th of April, 1873, of the entire patent. The plea alleges that the assignment set up in the bill from Milton A. Hamilton to Palmer Hamilton was not recorded in the patent office until after the time when the defendants made the purchase from Strong & Woodbury, and received from them the said assignment; that the defendants had no notice of such assignment from Milton A. Hamilton to Palmer Hamilton until after this suit was brought; and that they made the purchase from Strong & Woodbury and received from them said assignment, and paid them therefor in good faith the consideration of $1,000 therein expressed, without any knowledge or notice that any such assignment as that from Milton A. Hamilton, above mentioned, then or ever existed, and in the full belief that the said assignment from Strong & Woodbury gave to them a perfect title to such interest in the patent as it purported to convey. The bill alleges that the defendants, in violation of the rights conferred by the patent, and in infringement thereof, have made and sold, without the license of Palmer Hamilton, or Milton A. Hamilton, or the plaintiff, large

numbers of machines containing the patented invention, and have cut large amounts of lumber with such machines, and have realized large profits from such infringement. It also alleges that the plaintiff is the owner, by assignment, of all the rights of action for infringement of the patent which accrued to either Palmer Hamilton or Milton A. Hamilton. The plea alleges that the assignment from Milton A. Hamilton to Lombard and Thompson was recorded in the patent office on the 22d of October, 1866, that the assignment from Lombard and Thompson was recorded in the patent office on the 7th of August, 1868, and that the assignment from Reese was recorded in the patent office on the 7th of August, 1868.

It is contended for the defendants, on the hearing on the bill and plea, that the assignment from Milton A. Hamilton to Lombard and Thompson gave to the latter the exclusive right to use and sell to be used the saw-hangings, as applied to mulay or single upright mill-saws, within the state of New York, and the right to manufacture the same for such use or sale, in common with a right to manufacture the same, reserved to said Milton A. Hamilton. For the plaintiff, it is contended, that, by the assignment to Lombard and Thompson, the privilege granted to them is limited to the right to use and sell, and that Milton A. Hamilton expressly reserved to himself the right to manufacture.

The language of the assignment to Lombard and Thompson is inartificial and awkward, but the meaning of it is, I think, clear. The grantor, having the right to the patent for the whole of the United States, for its application to mulay or single unright mill-saws, that is, the exclusive right, for the whole of the United States, to make, use and sell saw-hangings according to the patent, as applied to mulay or single upright mill-saws, conveys to Lombard and Thompson, for $3,000, the exclusive right to use and sell saw-hangings according to the patent, as applied to mulay or single upright mill-saws, for and in the state of New York, and excepts and reserves to himself the right to manufacture the patented invention. He conveys the exclusive right to use and sell in the state of New York. He does not convey the exclusive right to make in that state, because he reserves the privilege of making himself in that state. He retains the exclusive right to use and sell in other states, and the privilege of making in the state of New York for use and sale in other states is desirable to him. He does not except and reserve the exclusive right to make in the state of New York, but merely a right to make. On all proper rules of construction, the exception and reservation must be held to be an exception and reservation of something which, but for such exception and reservation, would pass, by the granting part, to the grantee. A right to use and sell, and, especially, an exclusive right to use and sell, for which $3,000 is paid, would be practically valueless if no machines to use or sell could be obtained except by some further agreement with the grantor, who retained the exclusive right to make. The construction contended for by the plaintiff requires that the exception and reservation should be read as if it excepted and reserved the "exclusive" right to manufacture. It does not. In view of the fact that there can be no use or sale of a machine unless it can be made, it is a violent wresting of language to construe the exception as one of an exclusive right to make, as compared with a construction which makes the grant one of an exclusive right to make, use and sell, reserving to the grantor a right to make. The effect of such a grant, coupled with the reservation, is to grant an exclusive right to use and sell, and a right to make, and to reserve a right to make in common with the right of the grantee to make, the grantor not retaining any right to use or sell in the state of New York, and the grantee not acquiring any right to use or sell, out of the state of New York, any machines made by him in that state. If the granting clause be held to cover nothing but the right to use and sell, the reservation clause is of no force. The instrument, on such view, would have the same effect without the reservation clause as with it. It is plain that the grantor regarded the granting clause as bearing the interpretation that it would carry the right to make, and that, because of the use of the word "exclusive," it might be held to be an exclusive right to make, as well as an exclusive right to use and sell; and that, desiring to reserve a right to make, and to grant a right to make, the language used was used, the effect being to leave the right to make in the state of New York exclusive in the grantee and the grantor in common, and the right to use and sell exclusive in the grantee. This interpretation is the only one which gives effect to all the words found in the instrument. Woodworth v. Curtis [Case No. 18,013].

The assignment is to Lombard and Thompson, "and to their legal representatives," to be held and enjoyed by them for their own use and behoof, "and for the use and behoof of their legal representatives." It is contended, for the plaintiff, that the instrument conveyed a mere personal license to Lombard and Thompson, and that it did not authorize them to assign their right. I think otherwise. The words "legal representatives" must be held to mean "assigns," as well as "executors and administrators." It certainly means something. If it means "executors and administrators" and not "assigns," the instrument ceases to be a personal license. But it is fair to suppose that both grantor and grantees understood that, for $3,000, the grant was to be assignable, and that the parties understood, by "legal representatives," those who would legally represent the

grantees by a legal and valid voluntary transfer from them, equally with those who would represent them by a legal and valid involuntary transfer. Especially is this so when we find that the grantor, in the reservation clause, excepts and reserves the right to manufacture, "for myself and legal representatives." He not only could not have intended to cut himself off from the right to assign the reserved right to make, but he must have contemplated that, in there using the words "legal representatives," he included assignees.

The plea does not admit the doing, by the defendants, of anything which it can, on the bill and the plea, be held it was unlawful for them to do, and the plea must be allowed, with costs to the defendants, with liberty to the plaintiff to move, on notice, within thirty days after service of a copy of the order to be entered hereon, for leave to amend his bill, under rule 35 in equity, and, in default thereof, the bill must be dismissed, with costs.

[NOTE. The plaintiff subsequently amended his bill by setting forth two unrecorded instruments. There was a plea to the amended bill and a replication to the plea, and proofs were taken thereon. The cause was then submitted to the court on briefs without oral argument, and the plea was duly overruled. Case No. 5,985. A petition for a rehearing was afterwards denied. 4 Fed. 428.
[See note to Case No. 5,982 for other cases involving this patent.]