ADAMS and another *v.* HOWARD and others.

*(Circuit Court, S. D. New York. December 26, 1884.)*

1. PATENTS FOR INVENTIONS—LICENSE—ASSIGNABILITY.
    Generally, a license to make and use a patented invention is a privilege personal to the licensee, which is incapable of assignment; but where the license reserves no royalty to the owner of the patent, and grants the right, not only to the persons named as parties of the second part, but also to their executors, administrators, and assigns, it is assignable.

2. SAME—TITLE IN SEVERALTY.
    Where such a license runs to the administrators and executors of the parties of the second part, as well as to their assigns, it is apportionable and divisible by assignment, and may be transferred in severalty by one of the licensees.

3. SAME—RECEIVER CONVEYING TITLE TO PATENT.
    The rule that a receiver cannot convey title to a patent unless the owner of the legal title joins, does not apply to the transfer of a mere equitable title.

4. SAME—DEFECT OF PARTY—OBJECTION RAISED ON HEARING.
    A defendant who has litigated a case on its merits will not be permitted to raise for the first time at the hearing the question of a defect of parties, unless indispensable parties are absent, and in that event the court will refuse to decree if the objection were not suggested.

On Motion for Rehearing. S. C. 19 FED. REP. 317.

*Betts, Atterbury & Betts,* for complainants.

*James A. Whitney,* for defendant Morse.

WALLACE, J. The defendant moves for a rehearing upon the ground that the interlocutory decree erroneously adjudges that the complainant Dietz is entitled to an injunction, and an accounting of damages and profits, as the owner of a license under the patent infringed by the defendant. It was held that Adams had acquired the title of the Chicago Manufacturing Company in the patent in suit, subject to an outstanding license which that company had granted to Archer and others to make and use the patented invention in the

state of New York and elsewhere, and that the complainant Dietz had acquired the rights of Pancoast, one of these licensees. 19 Fed. Rep. 317. The facts are these: By an instrument of the date of July 27, 1867, to which the Chicago Manufacturing Company was the party of the first part, and "Ellis S. Archer, William C. Ellison, and George Pancoast, of the city of New York, and constituting the firm of Archer, Pancoast & Co.," were parties of the second part, the first party, in consideration of a cash payment down, granted "to the parties of the second part, their heirs, executors, administrators, and assigns, the full and exclusive right of making each and all of the said inventions, and employing and using the same in the several states," (New York and 10 other states;) and also "the full right, but not the exclusive right, to use, and vend to others to be used, each and all of the said inventions in each and all parts of the United States." In July, 1868, one Murray was appointed a receiver of all the property and assets of the firm of Archer, Pancoast & Co., in an action brought to dissolve the copartnership, and as such executed to Dietz an assignment of all the rights and interest of the firm in and to the said letters patent. Subsequently, and in March, 1881, Pancoast, one of the firm and one of the licensees, executed a transfer of all his right, title, and interest in and to the letters patent to Dietz. The objection was taken by the defendants at the hearing of the cause that the instrument between the Chicago Manufacturing Company and Archer, Ellison, and Pancoast vested the license, not in the firm of Archer, Pancoast & Co., but in the several members thereof, individually, as tenants in common; and consequently that Dietz acquired nothing by the transfer from the receiver of the firm property. This objection was sustained, the reference to the parties of the second part in the license agreement "as constituting the firm of Archer, Pancoast & Co." being held to be merely *descriptio personis.* Nevertheless, it was held that by the transfer of Pancoast, in March, 1881, Dietz acquired Pancoast's interest in the license; and as no objection of non-joinder of Ellison and Archer was taken in the answer, and as their rights could be saved, Dietz was entitled to recover one-third of the damages and profits arising from the defendants' infringement of the rights of the licensees.

The point is now taken that the license was not assignable, but was a personal privilege to the parties named in the instrument; and it is also insisted that if the bill should be dismissed as to Dietz, it must also be as to Adams, because the latter cannot maintain a suit without joining the licensees. It may be conceded that, generally, a license to make and use a patented invention is a privilege personal to the licensee, which is incapable of assignment; but here the license reserved no royalty to the owner of the patent, and granted the right, not only to the persons named as parties of the second part, but also to their executors, administrators, and assigns. Such a license is assignable. *Hamilton* v. *Kingsbury,* 15 Blatchf. 64. It is also urged

v.22F,no.11—42

that the license is an entirety, not apportionable or divisible by assignment, and cannot be transferred except by the joint act of the licensees. The case of *Brooks* v. *Byam*, 2 Story, 525, is relied upon in support of this position. The gist of Judge STORY's decision in that case is found in that part of his opinion which is as follows: "What I proceed upon is that every conveyance of this sort must be decided upon its own terms and objects, and that it is very clear that no apportionment or division of the license or privilege can be made if it is contrary to the true intent and meaning of the parties in the conveyance." He then adverts to the maxim, *nullum simile est idem*, and proceeds to show why the very peculiar license in that case could not be apportioned in severalty. Here the language is inconsistent with such a deduction, because the license runs to the administrators and executors of the parties of the second part, as well as to their assigns. As there could not be joint executors or administrators, the terms and object of the instrument plainly provide for a devolution or transfer of the title in severalty. It is to be observed, also, that the assignment by Pancoast to Dietz is an assignment of his whole right, and not an attempt to split up or subdivide the rights acquired by him under the license, and for this reason the question is not analogous to that presented in *Brooks* v. *Byam*, or in *Consolidated Fruit Jar Co.* v. *Whiting*, 31 Leg. Int. 229.

Although Dietz has not acquired the interests of Archer and Ellison in the license, the complainants should be allowed to proceed to a decree for their damages and profits. If it had appeared that the original licensees had treated the license as a partnership asset between themselves, Dietz would have acquired the interests of all under the purchase from the receiver. The rule that a receiver cannot convey title to a patent unless the owner of the legal title joins, as held in *Gordon* v. *Anthony*, 16 Blatchf. 234, does not apply to the transfer of a mere equitable title. The circumstance that the instrument came to the hands of the receiver with the rest of the firm property is suggestive that the licensees regarded the license as a partnership asset. The additional circumstance that Pancoast, who is the only survivor of the firm, and, as such, regarded himself as succeeding to all the firm property not transferred by the receiver, assigned the license to Dietz as a firm asset in further assurance of the receiver's transfer, bears towards the same conclusion. If the legal representatives of Archer and Ellison have any interest in the accounting, their interests have long lain dormant, and the objection that they are not joined as complainants should not be regarded favorably. *Graham* v. *McCormick*, 11 FED. REP. 859. If the objection to their non-joinder had been taken by the answer, it could not have been disregarded. But such an objection may be waived in equity as well as at law. At law, unless such non-joinder is pleaded in abatement, the only effect in an action of tort is to reduce the plaintiff's recovery to his proportionate share of the damages. And if one

of several part owners of a chattel sues alone for a tort, and the defendant does not plead in abatement, the other part owners may afterwards sue alone for the injury to the individual shares, and the defendant cannot plead in abatement to such action. *Sedgworth* v. *Overend*, 7 Term R. 279. The defendant has litigated the case on its merits, and therefore will not be permitted to raise for the first time at the hearing the question of a defect of parties, unless indispensable parties are absent; and in that event the court would refuse to decree if the objection were not suggested. The rights of the absent, if there are any, will not be prejudiced by an accounting between the complainants and the defendants respecting the injury to the complainants' rights. There are no merits in the application for a rehearing, and the application is denied.