## Case No. 11,008.

### PERRY v. LITTLEFIELD et al.

[17 Blatchf. 272; 17 O. G. 51; 4 Ban. & A. 624.] [1]

Circuit Court, N. D. New York.　Nov. 10, 1879.

PATENTS—ASSIGNMENT—EQUITY—DEMURRER—DECREE OF TRANSFER.

1. The decision of the supreme court in Littlefield v. Perry, 21 Wall. [88 U. S.] 205, construed.

2. The invention covered by the claim of the letters patent [No. 4,006] re-issued to Dennis G. Littlefield, May 31st, 1870, for an "improvement in the mode of hinging covers to stoves, tea-kettles and other open-topped vessels," on the surrender of the original letters patent [No. 53,251] granted to said Littlefield, March 13th, 1866, namely, "a detachable cover and its seat, respectively provided with a pin and an opening, so constructed as to engage or lock with each other, for the purpose of hinging and securing a cover upon an open-topped vessel, substantially as described," is an invention the exclusive right to which for the states of New York and Connecticut, as applicable to stoves covered by the patents embraced in the assignment of April 5th, 1853, and in the supplemental agreement of the same date, referred to in Littlefield v. Perry [supra], belongs to the plaintiff, as against Littlefield and all persons claiming under him.

3. A bill in equity being maintainable in some respects, a demurrer to the whole bill was overruled.

4. The parties to the suit being all of them citizens of New York, this court has no power to decree that the defendant execute to the plaintiff a transfer of letters patent.

[This was a bill in equity by John S. Perry, trustee and executor, against Dennis G. Littlefield and the Littlefield Stove Manufacturing Company.]

Hamilton Harris, for plaintiff.
Edward F. Bullard, for defendants.

BLATCHFORD, Circuit Judge. The assignment of April 5th, 1853, recites the granting to Littlefield of a patent on the 15th of April, 1851 [No. 8,047], "for a coal burner so constructed as to produce combustion of the inflammable gases of anthracite coal," and the fact that he had applied for a patent "securing to him a certain improvement in the invention so as aforesaid patented by him," and then assigns to Treadwell and Perry all the right, title and interest which Littlefield "now has, or can or may hereafter have, in or to the aforesaid inventions, improvement and patent, or the patent or patents that may be granted for said inventions, or any improvements therein, and in any extension or extensions thereof, within and throughout the district and territory embraced within the states of New York and Connecticut, for and during the term for which the aforesaid letters patent were granted, and the terms for which any patent for the aforesaid improvement, and any other

improvement or improvements thereof, or extensions for or of either thereof, may be granted." The supreme court of the United States, in Littlefield v. Perry, 21 Wall. [88 U. S.] 205, held that this assignment, "taken by itself, contains, in most unmistakable language, an absolute conveyance by the patentee of his patent and inventions described, and all improvements thereon, within and throughout the states of New York and Connecticut;" and that this assignment and a supplementary agreement executed between the same parties at the same time, when construed together, operated to constitute Treadwell and Perry the assignees of Littlefield, within the patent laws, in respect to the subject-matter of the assignment, and to give them, and those claiming under them, the right to sue in this court, to prevent any infringement upon their rights. On the 22d of July, 1853, Littlefield withdrew the application before-mentioned, which had been filed December 30th, 1852, and filed a new application, on which a patent [No. 10,448] was issued to him January 24th, 1854. The supreme court held, in the case referred to, that the assignees became, in equity, the owners of this patent of 1854, under the assignment of April, 1853; that all the patents outstanding, and the subject of the controversy in that suit, exclusive of the patent of 1851, were either re-issues of the patent of 1854 or improvements upon it; and that the use of the said patents, issued after January, 1854, by Littlefield and his co-defendant Jagger, was an infringement of the rights of said assignees. The patents so referred to were these: a patent issued June 25th, 1861; re-issues in two parts, 132 and 133, made November 19th, 1861, of the patent of January 24th, 1854; re-issues in four parts, 1,332, 1,-333, 1,334 and 1,335, made August 26th, 1862, of the patent of January 24th, 1854, on the surrender of re-issues 132 and 133; re-issues in two parts, 1,426 and 1,427, made March 3d, 1863, of the patent of January 24th, 1854, on the surrender of two of the four re-issues of August 26th, 1862; re-issues in two parts, 1,478 and 1,479, made May 19th, 1863, of the patent of January 24th, 1854, on the surrender of the remaining two of the four re-issues of August 26th, 1862; re-issues in two parts, 1,813 and 1,814, made November 8th, 1864, of the patent of January 24th, 1854, on the surrender of re-issues 1,426 and 1,427; re-issue 1,815, made November 8th, 1864, of the patent of January 24th, 1854, on the surrender of one of the two re-issues of May 19th, 1863; re-issue 1,823, made November 22d, 1864, of the patent of January 24th, 1854, on the surrender of the remaining one of the two re-issues of May 19th, 1863; a patent issued December 19th, 1862; a patent issued August 18th, 1863; and re-issue 1,594, made December 22d, 1863, of the patent of August 18th, 1863. The outstanding patents, when the bill of revivor and supplement was filed by John S. Perry, trustee,

---

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge; reprinted in 4 Ban. & A. 624; and here republished by permission.]

&c., against Littlefield and Jagger, on the 6th of February, 1865, were (exclusive of the patent of 1851) the patent of June 25th, 1861, the patent of December 9th, 1862, re-issues 1,813, 1,814, 1,815, and 1,823, of the patent of January 24th, 1854, and the re-issue 1,-594, of the patent of August 18th, 1863.

The present bill is filed by the same plaintiff who filed the said bill of revivor and supplement in the former suit and in the same right and on the same title. He claims to be the equitable owner, by said title, of a patent re-issued to the defendant Littlefield, May 31st, 1870, on the surrender of a patent granted to him March 13th, 1866, so far as the states of New York and Connecticut are concerned, and charges that the defendants have infringed said patents of 1866 and 1870. The bill prays for an account of the profits to a permanent fastening were, in a measure, obviated. Said device consisted in placing an oval shaped pivot-pin upon the under side of the cover near its edge, which fitted into an oval shaped aperture in the rim or upper plate of the stove. A recess or notch cut upon a narrow side of the oval pivot, deep and wide enough to embrace the thickness of the stove plate, permitted the cover to be swung open horizontally and supported in all those positions in which there was not a coincidence of the larger axis of the pivot with the oval aperture. This mode of hinging the cover to its seat was defective, in that it made an extremely loose joint, and permitted a detachment of the cover at two distinct points, thereby permitting it to fall off on being swung half around. The object of my present invention is to im-

[Drawings of re-issued patent No. 4,006, granted May 31, 1870, to D. G. Littlefield. Published from the records of the United States patent office.]

of the defendant and of the plaintiff's loss, and that the plaintiff's title for New York and Connecticut, under said patents of 1866 and 1870, may be established.

The specification of the re-issue of 1870 states that Littlefield has invented an "improvement in the mode of hinging covers of stoves, tea-kettles and other open-topped vessels." It proceeds: "In covering stoves, tea-kettles and other vessels opening upwardly, it has long been found useful and advantageous to so adjust and cover the vessel, that the former may be swung aside in a horizontal plane, without its falling off, and so connected to its seat that it may be readily detached from it. Some years ago I designed and applied to the covers of a stove oven which opened upwardly, a hinge of novel construction, by which the objections prove upon the hinge there constructed, and to obtain a hinge for the cover of open-top stoves, tea-kettles and other vessels, which shall work closely and evenly, and be so formed that the cover may be readily swung open, and avoid all possibility of its falling from the vessel by its own weight when so swung aside, and also be removed, when desirable to do so, without trouble or inconvenience. This invention relates to hinging and securing covers upon open-topped vessels, and consists in forming with a cover and its seat respectively, a circular opening and a cylindrical pin, so constructed that they will engage or lock with each other." Drawings are annexed to the specification and it refers to them in these words: "Figure 1 is a plan view of the under side of an annular cast-iron plate, designed as a por-

tion of the top piece of a stove, with a cover attached thereto by means of my improved hinge. Figure 2 is a side elevation of the same. Figures 3 and 4 are views in perspective of detached portions of the top and cover respectively, embracing the pivot and pivot aperture forming my improved hinge."

The specification also says: "My invention, as represented in the drawing, may be described as follows: The plate or rim A has a circular opening a, and the cover B has fitted to or cast with it a cylindrical pin b, or vice versa. The opening a is so formed, that, when the cylindrical pin is introduced therein, the two engage or lock with each other and form a hinge joint, the pin fitting closely and flush in the aperture at all times, whether the cover is at a state of rest or being turned. The close and accurate manner in which the cylindrical pin is embraced within the circular aperture prevents, at the same time, all loose play or movement thereof. Thus, while the cover B, as with the former hinge, has an easy horizontal movement, it cannot, owing to the cylindrical form of the pivot pin, and the circular form of the aperture, become accidentally detached, when swung open, although the cover, as with the former hinge, may be as readily lifted off as if there were no hinge attached to it. Hence, no inconvenience can arise from the employment of my present improvement, and it presents the advantage of creating but little expense in its construction, its parts being cast with the plates proper." The claim of the re-issue is in these words: "A detachable cover and its seat, respectively provided with a pin and an opening, so constructed as to engage or lock with each other, for the purpose of hinging and securing a cover upon an open-topped vessel, substantially as described."

The specification of the surrendered patent of March 13th, 1866, contained this language: "In covering tea-kettles, stoves and other vessels opening upwardly, it has long been found useful and advantageous so to combine the cover proper with the vessel as that the former may be swung aside in a horizontal plane without falling off. Heretofore, however, this result has been accomplished by means of rivets, bolts or other similar secure joints, so formed as that, although the cover had free play horizontally, it could not be lifted off or detached from the vessel without great trouble and inconvenience. Some years ago I designed and applied to the ornamental covers of open stove ovens, an improvement in these swing joints, by which the objection of a permanent fastening was in a measure obviated. This improvement consisted simply in placing an elongated or oval shaped boss or projection upon the under side of the cover, near its edge, which fitted into a similarly shaped aperture in the rim of the upper plate of the stove. A recess or notch, cut upon one end of the oval projection, deep and wide enough to embrace the thickness of the stove plate, permitted the cover to swing around and be supported in all those positions in which there was not a coincidence of the larger axis of the projection and aperture. This mode of pivoting was defective, however, in that it made an extremely loose joint, which, by its complete articulation in opposite positions, allowed a detachment of the cover at two distinct points. The object of my present invention has been to improve upon the plan then invented, and to obtain a pivoted or swing joint for the cover of open-top stoves, tea-kettles, and other vessels having vertical openings or recesses, which shall work closely and evenly, and be so formed as that the cover may be not only readily swung aside, in order to fill the vessel, without the necessity of lifting it off, or the possibility of its falling away by its own weight when so swung aside, but can, also, when closed, and then only, be readily removed without trouble or inconvenience. The nature of my improvement consists chiefly in the substitution of a circular aperture in the rim or top plate of the vessel, and a round pivot pin or projection upon the under side of its cover, in the place of the elongated or oval aperture and projection. heretofore designed. * * * I do not claim broadly the combination of a swing cover with a vessel, in such a manner as that it may be readily detached therefrom, but what I do claim as my invention and desire to secure by letters patent is, the use of a cylindrical keyed pivot pin, in combination with a circular notched aperture, for the purpose of hinging and securing swinging covers upon stoves, tea-kettles, or similar open-topped vessels, substantially in the manner herein set forth." The other parts of the specification of the original patent do not differ substantially from the corresponding parts of the specification of the re-issue.

The bill alleges, that the stove to the cover of the oven of which Littlefield so applied, as stated in said specifications, the hinge made by the oval shaped pivot pin in connection with the oval shaped aperture, was the stove patented by said patent of April 15th, 1851; that, by virtue of the said assignment of April 5th, 1853, and the said supplementary agreement of the same date, the plaintiff has the exclusive title, for the states of New York and Connecticut, to the said patent of 1851; and that, by reason of the premises contained in the original bill in the former suit, and in the bill of revivor and supplement therein, and in the present bill, the plaintiff has the exclusive title. for the states of New York and Connecticut, to the said patent of 1866 and the said re-issue of 1870.

The specification of re-issue 1,823, of the patent of January 24th, 1854, sets forth, that Littlefield has "invented new and useful improvements in stoves for burning anthracite and other concentrated fuels," and that what follows therein is a description of his invention. It also says: "My invention relates to

an improvement in stoves which are supplied with an excess of fuel and the excess or reserve fuel fed to the fire as fast as consumption takes place, and for which I have applied for letters patent in even date herewith, and my invention consists in the adaptation of a swinging cover to the top of the stove, so as to permit said cover to be swung open on a horizontal plane without falling off, when necessary to supply fresh coal or to cool the stove." It further states, that this cover is hinged to the top of the stove by a rivet, so that it may be swung aside on a horizontal plane, without its becoming detached and falling off. "whenever it may be required to open the chamber G, or to supply fresh coal, cool the stove, or for other purposes;" and that the inventor does not broadly claim hinging a cover to the top plate of a stove, but claims "the arrangement, adaptation and combination with a fuel supplying stove, of a cover so hinged to the top plate of the stove that it may be swung open on a horizontal plane, substantially in the manner and for the purposes specified."

The bill is accompanied by an affidavit made by the plaintiff, which states that he has in his possession a stove made by Littlefield about the year 1851 or 1852, in accordance with said patent of April 15th, 1851, which had and still has a double sliding cover attached to its open top, rim or upper plate, and an oval shaped pivot pin upon the under side of the cover, near its edge, fitting into an oval shaped aperture in the rim or upper plate of the stove, substantially according to the description of such arrangement in the specification of said patent of 1866, and in the specification of said re-issue of 1870; that another stove, made by said Littlefield during the year 1853, in accordance with said patent granted January 24th, 1854, and subsequently re-issued as aforesaid, and now in the possession of the plaintiff, had and still has a cover so hinged to the top plate, that it may be swung open on a horizontal plane, as more fully described in said re-issue 1,823; that the exclusive right to the use, within the states of New York and Connecticut, of the said patents of April 15th, 1851, and January 24th, 1854, and of the said re-issue 1,823, has been adjudged to have been conveyed to the plaintiff; that the said bill of revivor and supplement was filed January 25th, 1865; that, subsequently thereto, Littlefield made further inventions in said stove patented April 15th, 1851, and in the subject-matter of the invention patented by re-issue 1,823, which resulted in there being granted to him the said patent of 1866 and the said re-issue of 1870; that said inventions are legitimate improvements upon said inventions shown and described in said patent of April 15th. 1851, and said re-issue 1,823; that it is true that said improvements may also be applied to tea-kettles and other open-top vessels, but they were primarily adapted by Littlefield to stoves of the character conveyed to Tread-

well & Perry, and their assigns, by the assignment of April 5th. 1853; that Littlefield, since March 13th, 1866. has, with his associates, made and sold stoves embracing the said improvements, within the states of New York and Connecticut, and licensed other manufacturers of stoves to put in practice the same within the said territory; that Littlefield threatens to continue such invasion of the plaintiff's rights; and that the successors of Treadwell & Perry have on hand a large stock of stoves which embody said inventions patented in 1866 and re-issued in 1870, and are ready to supply the demand therefor in said states of New York and Connecticut.

There is, also, an affidavit by James Gray, a metal plate worker. with an experience of more than thirty years in stoves, ranges and hot air furnaces. He states that he is familiar with the stove constructed by Littlefield under said patent of April 15th, 1851; that such stove is not a cooking stove, as known to the trade, but is a parlor heating stove, combining an oven for culinary or air heating purposes; that the mode of attaching the swinging cover to the top plate of said stove is substantially described in the paragraph commencing "Some years ago I designed and applied," in said patent of March, 1866; that the mode of attaching the swinging cover to the top plate of the stove constructed by Littlefield under the original patent of re-issue 1,823, is substantially in accordance with the claim of re-issue 1,823; and that the device covered by the patent of 1866 and the re-issue of 1870 is a natural and legitimate improvement of the devices applicable to the swinging covers of the open tops of stoves, as patented by Littlefield April 15th, 1851, and by re-issue 1.823. Two other affidavits of experts, to the same purport as the affidavit of Gray, are produced by the plaintiff.

The bill prays for an account and an injunction, and also for a decree that the plaintiff is vested with the exclusive right, within the states of New York and Connecticut, to make and vend, and cause to be made and vended. stoves. embodying the improvement covered by the said patent of 1866 and the said re-issue of 1870, and that Littlefield be decreed to execute and deliver to the plaintiff all further transfers and evidences of title to the said exclusive right within the said territory, as may be necessary for the protection of the plaintiff in his said rights.

The defendants have put in a demurrer to the whole bill, assigning for cause that the plaintiff has not made or stated such a case as entitles him to any such relief as is prayed for, and that the plaintiff has an adequate remedy at law, and specifying the following additional grounds of demurrer: (1) The complaint does not state facts sufficient to constitute a cause of action; (2) it does not show that the plaintiff has any title to the patents set out in the bill; (3) this court

has no jurisdiction to compel the performance of the contract of 1853, referred to in the bill.

It is contended, for the defendants, that the patent of 1866 does not relate to the subject-matter transferred by the assignment of 1853; that the device patented by re-issue 1,823 is different from the subject-matter described in the patent of 1866; that re-issue 1,823 does not describe the construction of any hinge, but describes a cover fastened to the top of the stove by a rivet, and claims the adaptation of such cover to the top of the stove only when combined with a fuel supplying stove; that the patent of 1866 would be infringed by the use of the hinge therein patented in combination with any cover and its seat, where the cover would swing open horizontally; that this court cannot take jurisdiction of the matter in controversy in this suit, for the reason that the only patent alleged to have been infringed was applied for and granted after the assignment of April, 1853, was made; and that the invention of March, 1866, was not an improvement in the inventions involved in the former suit.

The original patent of January 24th, 1854, describes a reservoir over the fire pot serving the purpose of a magazine or receptacle for the fuel, where it is designed to feed the fire but once in twenty-four or forty-eight hours. The invention is stated to consist in employing a cylindrical grated fire pot, surmounted by such reservoir which receives the gases arising from the burning of the fresh coal, besides containing the supply of fuel; and the object of the invention is stated to be to effect a simultaneous combustion of the waste gases with the carbon of the coal. The reservoir and the exterior cylinder of the stove have each of them a cover.

Re-issues 132 and 133 are to the same purport. In each of the re-issues 1,332, 1,333, 1,334 and 1,335, it is stated that the patent of January 24th, 1854, is "for and upon a new method of constructing that class of stoves using a supplying cylinder for the reserve coal." Each of these re-issues describes the outer cylinder and its cover and the reservoir and its cover. Re-issues 1,426 and 1,427 contain, each of them, a like statement with that in re-issues 1,332, 1,333, 1,334 and 1,335 as to the patent of January 24th, 1854, and also describes the outer cylinder and its cover and the reservoir and its cover. The same is true of re-issues 1,478 and 1,479. Re-issue 1,813 states that the invention "relates to improvements in stoves which are supplied with an excess of fuel and the excess or reserve fuel fed to the fire as fast as consumption takes place," and describes the reservoir and its cover and the outer cylinder and its cover. The same is true of re-issues 1,814 and 1,815. The contents of re-issue 1,823 have been before specifically recited. Figure 4 of that re-issue is "a plan view of the top of the stove and

cover opening thereto." That re-issue must have been justified by the original specification, drawings and model. Its text shows that Littlefield declared the arrangement, in a fuel supplying stove, of a cover hinged to the top of a stove by a rivet, so as to be swung aside on a horizontal plane without falling off, to be an improvement in a stove for burning anthracite and other concentrated fuels. The specification of the original patent of January 24th, 1854, shows that the stove described was designed and arranged to burn anthracite coal. All the re-issues of that patent show the same thing. The assignment of April 5th, 1853, recites that the patent of April 15th, 1851, is a patent "for a coal burner, so constructed as to produce combustion of the inflammable gases of anthracite coal." By the supplemental agreement of the same date, Littlefield agrees to sue, for the benefit of Treadwell & Perry, all persons who shall infringe, within New York or Connecticut, the said patent of April 15th, 1851, "or any patent or patents which may hereafter be obtained in respect to the subject-matter thereof;" and he also agrees, that, in case the said patent, "or any patents which may hereafter be obtained by him, as aforesaid, for the subject-matter thereof, shall be adjudged invalid," so as to deprive Treadwell & Perry "of the use and enjoyment of the rights and interests conveyed by the aforesaid assignment," the agreements on the part of Treadwell & Perry shall thereby become void; and he also agrees to furnish to Treadwell & Perry, before the first day of August then next, at the cost price thereof, at their furnace, "undress cast iron patterns for four several sizes of the coal burner patented in and by the aforesaid letters patent, and embracing all the improvements therein for which letters patent shall then have been secured, suitable to mould and cast from, and that he will also furnish at the place and price aforesaid, within a reasonable time after letters patent have been secured by him therefor, undressed cast iron patterns of the several sizes, of all improvements upon said coal burner which shall be made or invented by him." It is entirely clear, that the plaintiff is entitled, as against Littlefield and all persons claiming under him, to the exclusive right, title and interest in and to any invention made by Littlefield, so far as it is applicable to the stove covered by the patents embraced in the assignment and the supplemental agreement, which facilitates or improves the method of hinging a cover to the top of the stove, so as to enable it to be swung aside on a horizontal plane without falling off. In re-issue 1,823 the cover is hinged by a rivet. In the original patent of March, 1866, the invention covered by that patent is stated to be an "improvement in the mode of attaching and hinging covers to stoves and other vessels, when said covers are designed to swing open in a hori-

zontal plane." That patent also states, that, "in covering tea-kettles, stoves and other vessels opening upwardly, it has long been found useful and advantageous so to combine the cover proper with the vessel as that the former may be swung aside in a horizontal plane without falling off;" and that "heretofore, however, this result has been accomplished by means of rivets, bolts, or other similar secure joints, so formed as that, although the cover had free play horizontally, it could not be lifted off or detached from the vessel without great trouble and inconvenience." Then follows, in that patent, the statement, that, some years ago, Littlefield "designed and applied to the ornamental covers of open stove ovens, an improvement in these swing joints, by which the objection of a permanent fastening was in a measure obviated," such improvement being the oval shaped projection on the under side of the cover, in connection with the oval shaped aperture in the rim of the upper plate of the stove. Then follows a statement, that the object of the new invention is to improve on the oval projection and oval aperture plan, and obtain a swing joint for the cover, which shall so work as that the cover may be not only readily swung aside without being lifted off or falling when swung aside, but may, when closed, and then only, be removed; and that the improvement consists chiefly in substituting a circular aperture in the rim or top plate, and a round projection on the under side of the cover, in place of the oval aperture and oval projection. This new invention is clearly applicable to the stove covered by the patents embraced in the assignment and the supplemental agreement. It improves the method of hinging a cover to the top of the stove, so as to enable it to be swung aside on a horizontal plane, without falling off. It is an improvement on the rivet method in re-issue 1,823. The rivet method was a permanent fastening. The oval projection and oval aperture method was an improvement which got rid of a permanent fastening, but was yet defective. The round hole and round projection method is a still further improvement. All three of the methods allow the cover to be swung aside in a horizontal plane, and to be supported in pre-determined positions. The re-issue of 1870, in the particulars just referred to, is to the same effect.

The bill complains only that the defendants have made and sold stoves containing the new improvement, and prays an account only in respect to such stoves, and a decree establishing the plaintiff's exclusive right for New York and Connecticut only, to make and sell stoves embodying the new invention. It does not extend the plaintiff's claim to covers for any vessels but stoves. As regards such stoves as are covered by the patents embraced in the assignment and the supplemental agreement, it seems quite clear that the plaintiff has the exclusive right, as

against the defendants, to employ in such stoves the improvement claimed in the re-issue of 1870, and that the bill is well founded in that respect. Whether the plaintiff would have the exclusive or any right to employ such improvement in other vessels than such stoves, is not a material question in this case. Even though the plaintiff, in respect to such re-issue, be a mere licensee in regard to such stoves, and not an assignee, or a grantee of the entire exclusive right under the patent for a specified territory, yet, as such licensee, he can maintain this bill against Littlefield and all persons who claim under him, as was directly determined by the supreme court in the former suit.

As the parties to the suit are all of them citizens of the state of New York, the bill is not maintainable, so far as it asks for a decree that Littlefield execute further transfers to the plaintiff. But, as the demurrer is to the whole bill, and as the bill is maintainable in all other respects, the demurrer must be overruled, with costs to the plaintiff, and with leave to the defendants to answer, on payment of such costs, to be taxed, within twenty days after service of a copy of the order to be entered on this decision.

The plaintiff also asks for a preliminary injunction to restrain the defendants from infringing the plaintiff's exclusive rights under the re-issue of 1870. Such injunction is granted, so far as regards the employment of the invention claimed in the re-issue of 1870 in such stoves as are covered by the patents embraced in the assignment and the supplemental agreement, as determined by this court and the supreme court in the previous litigations between the parties, and by this court in this decision.

[For other cases involving this patent, see Littlefield v. Perry, 21 Wall. (88 U. S.) 205; Perry v. Corning, Case No. 11,004. [Subsequently a motion to dissolve the injunction granted in this case was refused. 2 Fed. 464.]