FIELDING et al. v. CROUSE–HINDS ELECTRIC CO.

(Circuit Court, S. D. New York. July 5, 1906.)

PATENTS—INFRINGEMENT—RECEPTACLE FOR INCANDESCENT LAMPS.

The Fielding patent, No. 714,290, for improvements in receptacles for incandescent lamps covers a combination of old with two new elements, and, while it must be conceded patentable invention, taking into consideration the immediate acceptance of the device by the public, it must be strictly construed and limited to the precise combination shown in view of the prior art. As so construed and limited, *held* not infringed.

In Equity. On final hearing.

William M. Stockbridge and Hubert Howson, for complainants.

Arthur E. Parsons and William A. Redding, for defendant.

HAZEL, District Judge. The invention relates to improvements in receptacles for incandescent lamps, plugs, and other similar electrical apparatus. The letters patent, No. 714,290, which the defendant corporation is alleged to have infringed, were issued to Philip H. Fielding on the 25th day of November, 1902. The defendant H. T. Paiste Company is licensee under said patent. A patent for an electrical receptacle had previously been issued to the patentee on October 23, 1900, and the patent in suit is alleged to be an improvement thereon. The defendant's alleged infringing devices consist of a so-called electrical receptacle and an electrical rosette. The former comprises stationary lamp socket parts to support the lamp and supply to it the electric current, while the latter is a device from which a flexible cord containing two circuit wires leads to a socket having attached a hanging lamp. The invention in suit is concededly adaptable to both forms of apparatus. Each is capable of attachment to a wiring molding, and, as the patent in terms mentions receptacles or similar electrical devices, it is immaterial that neither the specification nor the claims particularize the contour or function of what is technically known as a "rosette." The patentee, acknowledging as old certain features embodied in his combination, substantially states in his specification that in his earlier patent he claimed and described a receptacle consisting generally of an inner part of porcelain to which the contact devices are attached, and an outer part (also of porcelain) which operates as a shield and completely incloses the inner part. In speaking of the advantages of the earlier patent, he says:

"The conductors are connected with it without cutting and splicing them, as was before necessary; the operation consisting simply in removing a portion of the insulation and looping the wire behind the binding-screw. To adapt this device for a wiring-molding, with which it was to be most commonly used, the inner part carrying the contacts was made of the same or less width as the space between the grooves for the conductors in the molding, and the binding screws, one on each side, were located immediately above or opposite the grooves, so that the conductor would simply have to be lifted from the groove and brought into engagement with the binding-screw."

The prior device, however, was not wholly free from objectionable construction. The open space between the binding-screws and wooden

molding endangered the latter to fire from the sparking of the electricity at that point. In this admitted state of the art the patentee claims to have improved and overcome the objectionable features of the earlier construction. Upon this point the patent in suit states:

"In my improved receptacle I have therefore provided a construction whereby the continuous wire can be looped, as before, through the receptacle, and yet have the space between the binding-screws and the face of the molding closed by a shield of porcelain or other insulating material of which the receptacle is made."

To fully comprehend the chief differences between the Fielding patents it will be helpful to further briefly state the asserted advantages of the prior structure: First, all the metallic parts were inclosed by a porcelain cover, and the danger of fire or shock was thereby claimed to be avoided; and, second, the parts of the receptacle were shaped to utilize a channel formed in the cover which closely fitted the base piece of the inner portion directly over each groove in the molding. Contact between the conductors and the binding-screw, which was adjusted laterally from the socket, was made by raising or deflecting the conductors over the grooves in the molding and clamping them to the binding-screw. Thus direct attachment of the main conductors to the receptacle was enabled, and the branch wire connection, which was necessary in the prior art to make the electrical contact, was obviated. Notwithstanding the improvements claimed the small spaces between the binding-screws and the wiring-molding at the point of electrical contact were left unprotected by insulating material, and therefore danger existed of ignition by electric sparks. To overcome this difficulty, and provide a method of insulating the unprotected spaces referred to, the patentee widened the inner part of the porcelain receptacle on both sides of its base between the binding devices and the face of the molding and closed the unprotected passages or channels, leaving in place thereof two openings which merely afford space or passageway for the electrical conductors. The conductor is lifted from the groove to the binding-screw, where it is looped over the ends of the shielding lip, which, as already observed, projects laterally from the base. The openings in the bottom of the receptacle, at the extremities of the lips, take the form of grooves and hold the conductor, which, after being clamped by the binding device, is led through the opening in the other end of the receptacle.

Having sufficiently described the invention in suit and pointed out the differences in the Fielding patents, the claims in controversy may be considered. The patent has seven claims; the first, second, third, and fifth being involved. As typical thereof it seems necessary to set forth in full only the third:

"(3) The combination of a wiring-molding and an electric appliance adapted to be applied thereto, the latter consisting of an inner and an outer part, the inner part being adapted to be placed between the grooves of the molding and provided with lateral lips extending over said grooves, binding devices carried by said inner part above the lips and an opening at each end of a lip to admit the wire in the groove to the appliance."

Claim 1 broadly provides for a continuous closed passage from one opening to another. The second claim states that the isolating shields or lips are interposed between the opening devices and the face of the molding. The essential element of the fifth claim specifically resides in the connecting openings or passages in the edges of the bottom face of the receptacle which lead through the interior of the apparatus and form a continuous passage for the electrical conductor. In short, the claims, as counsel for complainant concedes, are for a combination of old elements including essentially as new elements the shields or lateral lips on the base of the receptacle, together with the inclosing cover which has openings or passways in the form of grooves, as specifically mentioned in claim 3. Accordingly our attention may be directed to these additional features or new elements, not forgetting, however, that the claims are for specific combinations to produce a new and useful result.

The principal questions for decision are whether in view of the prior art the claims disclose a patentable invention, and, if so, are they sufficiently broad in scope to merit the application of the doctrine of equivalents? This suit is brought upon the later patent; infringement of the earlier not being claimed. Any separate features, therefore, which were embodied in Fielding's earlier patent, though also found in defendant's structure, cannot be considered to establish infringement except as found in combination with the new elements disclosed in the later invention. Such separate features are now old, and, as to them, standing alone, the patent in suit lacks novelty. The patent must be limited to the specific combination described. Underwood v. Gerber, 149 U. S. 224, 13 Sup. Ct. 854, 37 L. Ed. 710; Doig v. Morgan Machine Co., 122 Fed. 460, 59 C. C. A. 616.

Upon the question of novelty of the invention the defendant's expert witness specially places stress upon the prior patent to Fielding, No. 660,154, patent No. 489,682, to Metzger, the Edison receptacle, Prior receptacle No. 9,171, patent No. 369,889 to Stoddard, No. 315,-673 to Smith, No. 646,008 to Pfatischer, and the German patent, No. 60,924, to Schwarzlose; and defendant insists that the patent in suit is a mere aggregation of the elements of prior patents. That the improvement resulted in a more ornamental, convenient, or perfect receptacle than before known is not disputed, but this fact is not enough if it lacks patentable novelty.

The question whether the shielding lips of the patent are within the field of patentable invention, or whether their usefulness was perfectly obvious to persons skilled in the art, is thought somewhat doubtful. On this point the testimony of the expert witnesses for complainants and defendant is widely discrepant. The mere addition of lateral lips extending over the grooves and the remodeling of the channels of Fielding's prior device to afford protection from electric sparks, and then leading the conductors continuously through the interior of the receptacle, were, perhaps, slight advances in the art. The testimony indicates that the improvements, though narrow, were quickly appreciated by the public, and therefore any doubt which may exist regarding patentability of the claims embodying the lateral ex-

tension of the base may fairly be resolved in favor of the patent. Thomson-Houston Elec. Co. v. Ohio Brass Co. (C. C.) 130 Fed. 545; Krementz v. S. Cottle Co., 148 U. S. 556, 13 Sup. Ct. 719, 37 L. Ed. 558. But the prior state of the art constrains me to limit the claims to the precise construction shown. The proofs are that the base, cover, means for attaching the molding, the lateral arrange- ment of the binding screws to enable hitching the bared conductors thereto, in combination and separately considered, were familiar to the art, and, indeed, were disclosed in the prior Fielding patent. In the patent to Stoddard is shown a rosette having contact connections similar to those used by the defendant: that is, the contacts between the bared wires and the fastening screws are made on the top of the base, which extends entirely across the molding. The conductors run through grooves in the receptacle onto the molding, and a closed pas- sage is formed between the upper and base portions of the recep- tacle; the binding screw being located in the passages. Manifestly, therefore, it was not original with the patentee to construct closed passages in the interior of an electrical device of the character des- cribed in the specification, by means of which the conductors could be continuously led through the interior thereof. True, the open- ings in the Stoddard structure are not at the bottom face of the re- ceptacle as in that of complainant, and the wires are partially ex- posed, but these features are not such substantial differences as to warrant broadening the claims to include the defendant's rosette.

A preponderance of the evidence would seem to support the view that the patent in suit is an improvement on the earlier Fielding de- vice only in the two elements pointed out, viz., the lateral lips and the closed passages in the interior of the receptacle; the latter element being similar to that shown by the patents to Stoddard, Pfatischer, and Smith, and obviously attaining the same result. Accordingly the claims must be strictly construed.

This brings me to a consideration of the question whether the de- fendant's structure infringes the combination which includes as an element the shield of porcelain or lateral lips, e, e. In the defend- ant's structure the wires are not attached laterally to the binding- screw, which is an important feature of the patent in suit, but extend over the sides of the base and rest in a small narrow groove along the surface to the contact point. In other words, the conductors are carried over the top of the base or insulating block and fastened to the plates a short distance from the ends, and thence they pass down the jotted or notched ends, through the receptacle, to the molding. In view of a strict construction of the claims embodying this feature, it is not thought that the sides of the base of defendant's structure along which the conductors extend are the equivalent of the projecting lips of the patent in suit. The exhibit structures of Metzger and Schwarzlose which disclose a socket arrangement are similar to the Fielding patent in suit, and evidently suggest the lateral projection for insulating the wires at the point of contact. Though the exten- sion described in the Metzger specification refers to an elevation in the center of the base, the lateral extension is produced by making

the central extension smaller than the base, and hence the same result is attained as claimed in the device in suit. The Metzger and Schwarzlose patents, and those to Smith and Pfatischer, though of prior dates and relating to the art under consideration, were not set up in the answer of the defendant, and can only be considered to limit the claims in suit. Jones v. Cyphers, et al. (C. C.) 115 Fed. 324; Waterman v. Shipman, 55 Fed. 982, 5 C. C. A. 371.

For the foregoing reasons I am of the opinion that the claims must be limited to the specific combinations described, and that the defendant has not appropriated the complainant's structure.

The bill is dismissed, with costs.