## WATERMAN v. SHIPMAN et aL

(Circuit Court of Appeals, Second Circuit. April 18, 1893.)

1. PATENTS—MORTGAGE—TRANSFER OF TITLE.

A mortgage by a patentee vests in the mortgagee the whole title to the patent rights, subject only to be defeated by performance of the condition, or by redemption by bill in equity within a reasonable time after default, and the right of possession to the incorporeal property is, in legal effect, delivered to the mortgagee at the time of the recording of the mortgage at the patent office.

2. SAME—RECITAL OF LICENSE—NOTICE TO PURCHASER.

The recital in a mortgage of patent rights of the existence of a license is notice to the mortgagee and purchasers of the patent rights under the mortgage of all the terms and conditions of the license.

3. SAME—ASSIGNMENT OF LICENSE—SUPPLEMENTARY PROCEEDINGS IN AID OF EXECUTION.

In the absence of words showing that it was intended that the license might be assigned, a license conferring the exclusive right to manufacture and sell patented articles is not assignable, and does not vest in a receiver of the property of the licensee, appointed in proceedings supplementary to execution under the New York Code of Civil Procedure.

4. SAME — INFRINGEMENT — SUIT BY EXCLUSIVE LICENSEE AGAINST OWNER OF PATENT.

A licensee who has the exclusive right to manufacture and sell a patented article can maintain a suit in equity against the patentee, if the latter is guilty of an infringement by making and selling himself, to redress the wrong occasioned thereby, and such suit arises under the patent laws of the United States.

5. SAME—INFRINGEMENT—SUIT BY LICENSEE — COMBINATION BETWEEN OWNER AND CODEFENDANTS.

If the bill of the licensee who has the exclusive right to manufacture and sell a patented article alleges a combination between the owner of the patent and other persons, who are made parties defendant with the owner, to deprive the complainant of the benefits and advantages of his license, and the evidence shows that a license granted by the owner of the patent to his codefendants was granted by him, and procured by them, for the paramount purpose of preventing the complainant from enjoying the monopoly conferred by his license, the defendants are joint infringers of the complainant's rights, and he is entitled to relief against all the parties defendant.

6. SAME—VALIDITY—WANT OF NOVELTY—EVIDENCE.

If defendants in a suit for infringing letters patent plead want of novelty, and set up in their answer, and offer in evidence, a large number of patents prior in date, to those of the complainant, the court will not examine these patents, in the absence of expert testimony to explain them, or to indicate what they contain to negative the novelty of the complainant's patents, unless the character of the invention has so little complexity that expert testimony is not required for that purpose.

7. SAME—WANT OF NOVELTY—EVIDENCE.

In a suit for the infringement of letters patent, defendants introduced in evidence a pamphlet of about 25 pages, published two years after the patents were issued, entitled "An Expose of the Assumptions and Business Methods of a Dealer and Reputed Inventor," which was prepared and published by a rival manufacturer apparently for the purpose of discrediting the inventions of the complainant, and his personal character and business methods. The greater part of the pamphlet was scandalous matter, irrelevant to the issues. The author testified that, so far as it referred to the patents he had studied, the pamphlet correctly expressed his views respecting the same. *Held,* that the contents of the pamphlet could not be considered competent evidence upon the issue of novelty, and that complainant's counsel was justified in refusing to cross-examine the author.

Appeal from the Circuit Court of the United States for the Southern District of New York.

In Equity. Bill by Lewis E. Waterman against Asa L. Shipman (who died before final hearing, and whose executor has been substituted) and James D. Shipman and Edward L. Shipman, his sons, copartners by the firm name of Asa L. Shipman's Sons, alleging the infringement of certain letters patent. The circuit court dismissed the bill. Complainant appeals. Reversed.

Salter S. Clark, for appellant.

A. v. Briesen, for appellees.

Before WALLACE and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. This is a bill in equity, alleging the infringement of two patents for fountain pens,—No. 293,545, dated February 12, 1884, and No. 307,735, dated November 4, 1884,—each granted to Lewis E. Waterman, as inventor. The defendants were originally Asa L. Shipman (who died before final hearing, and whose executor has been substituted) and James D. Shipman and Edward L. Shipman, his sons, who were copartners by the firm name of Asa L. Shipman's Sons. The questions which have been principally litigated are those in respect of the title to the patents; it being insisted for the defendants that the title at the time of the commencement of the suit was in Asa L. Shipman, and consequently that the complainant could not maintain the bill. The facts bearing upon this branch of the case are these: Prior to November 20, 1884, the title to the patents had been assigned by the complainant to Sarah E. Waterman, his wife, and on November 20, 1884, she granted to him an exclusive license to manufacture and sell the patented improvements throughout the United States. By the terms of the license he agreed to make full returns on the first day of every month of all fountain pens containing the patented improvements, manufactured by him, and to pay to her the sum of 25 cents as a license fee for every pen so manufactured on or before the 5th day of every month, for the pens manufactured during the preceding months. The license provided that "upon a failure of the licensee to make returns after thirty days, or to make payment of the license fees after ninety days from the time when such returns and payments are due, then the said Sarah E. may terminate this license by serving a written notice upon the said licensee; but that will not discharge him from any liability for any license fees due when such notice was given." November 25, 1884, Mrs. Waterman executed to Asa L. Shipman's Sons a mortgage of the two patents as collateral security for the payment of a note of $6,500 made by her and the complainant, payable in three years. By this instrument, Mrs. Waterman assigned to the mortgagees all her right, title, and interest in the inventions and the patents upon the express condition that the assignment should be null and void if she and her husband, or either of them, should pay the note at maturity. It contained also a recital that the interest conveyed was free from all incumbrances except a license to this complainant to manufac-

ture and sell pens under both patents. The mortgage was duly recorded in the patent office December 29, 1884; and from the time of its execution until November 25, 1887, the complainant continued to manufacture and sell the patented improvements, making returns to Mrs. Waterman, and paying royalties to her, under his license, until the 16th day of April, 1886, when she executed to him an assignment of all her right, title, and interest in the patents. The note given to secure the mortgage became due November 28, 1887, and was not paid, and shortly thereafter Asa L. Shipman granted to the firm of Asa L. Shipman's Sons an exclusive license to manufacture and sell the patented pens. He also brought suit upon the note in the supreme court of the state of New York, and on the 22d day of December, 1887, duly obtained judgment thereon against the complainant and Mrs. Waterman for the full amount, with interest. After the execution of the license to the firm of Asa L. Shipman's Sons, and about April 1, 1888, they began to manufacture and sell as the patented pens an article identical with those which the complainant had made and sold under his license. They were manufacturing these pens when the present bill was filed, and continued to do so until May 10, 1888. The judgment obtained against the complainant and his wife not having been paid, supplementary proceedings, pursuant to the Code of Civil Procedure of the state of New York, were instituted, which resulted in the appointment of a receiver, who on the 10th day of April, 1888, duly qualified, and became vested, under the provisions of the Code, with all the property, legal and equitable, belonging to the complainant. On January 9, 1888, Asa L. Shipman sent the complainant a letter giving him notice "that the license given you by Mrs. Waterman is revoked, and suit will be brought against you for infringement of said patents." On April 26, 1888, he sent the complainant another letter, stating "that, in addition to the notice already handed to you, the license agreement executed by Sarah E. Waterman to you, dated November 18th, 1884, is hereby revoked, on account of your failure to make due returns thereunder on the first day of January, 1888, and also on February 1st, 1888, and also for your failure to pay the royalties under said agreement which became due to me on December 5th, 1887; also, on January 5th, 1888."

On April 27, 1888, the complainant made a tender to the attorney of Asa L. Shipman of the full amount of the judgment obtained upon the note, together with the costs of the suit; but this tender did not include anything for the fees of the receiver in the supplementary proceedings. On the 5th day of May the present suit was brought. The circuit court dismissed the bill, without a written opinion, apparently upon the ground that the legal title to the patent was in Asa L. Shipman at the time of the commencement of the suit.

It is entirely clear, upon the authority of Waterman v. Mackenzie, 138 U. S. 252, 11 Sup. Ct. Rep. 334, that by virtue of the mortgage the whole title to the patents at the time of the execution of the instrument became vested in the mortgagees, subject only to be defeated by performance of the condition or by re-

demption of the bill in equity within a reasonable time, and that the right of possession to the incorporeal property was in legal effect delivered to the mortgagees at the time of the recording of the mortgage in the patent office. We do not consider it necessary to determine whether a tender of the mortgage debt, made after the day of payment, entitled the complainant, as the assignee of the mortgagor, to a reconveyance of the patents. Nor do we deem it necessary to determine whether the tender made by him April 27th was a sufficient one, or whether it should have included a sum sufficient to cover the fees of the receiver in the supplementary proceedings. We regard it as entirely immaterial, for the purposes of the present suit, whether the legal title to the patents was or was not in the complainant at the time of the commencement of the suit. The mortgage of Asa L. Shipman was subject to the license which had previously been granted to the complainant, and could in no manner operate to restrict or curtail the exclusive right of the complainant to make and sell the patented improvements, so long as the license should remain unrevoked. The recital in the mortgage of the existence of this license was notice of all its terms and conditions. It is familiar doctrine that a purchaser will have constructive notice of everything appearing in any part of the deed or instrument constituting the title purchased, which is of such a nature that, if brought directly to his knowledge, it would amount to actual notice; for the right of a purchaser can in no case go beyond his own title, and whatever appears on the face of the title papers forms an integral part of the title itself. Such notice, therefore, is of the most conclusive nature, and is insusceptible of being explained away or rebutted.

The bill of complaint alleges that the license granted to the complainant was in full force at the time of the commencement of the suit. This averment is not denied by the answer; and the answer makes no issue setting up the invalidity of the license, or any revocation by reason of failure to make returns, or pay royalties, or for any other reason. There is evidence in the record, however, which has been referred to, of letters sent by Asa L. Shipman to the complainant,—one of the date of January 9, 1887, and one of the date of April 26, 1888,—giving notice of the revocation of the license. Under the issues made by the pleadings, we ought not to notice this evidence. It is proper, however, to say that the letter of January 9th did not assign any reasons for revoking the license, and the letter of April 26, 1888, assigned grounds for revoking it which do not appear to have been correct in fact. The complainant was not in default for failure to make returns on the 1st day of January, 1888, or on the 1st day of February, 1888, or for not paying royalties on the 5th of December, 1887, or on January 5, 1888. He did not manufacture at all in the months of December or January, and, if any royalties became due on December 5th or on January 5th, the fact does not appear.

Even if it were open to the defendants, under their answer, to assert that at the time when the suit was commenced the complainant's interest in the patent had vested in the receiver in supplemen-

tary proceedings, the contention would be untenable. The license was not assignable. No license is assignable by the licensee to another unless it contains words which show that it was intended to be assignable. Factory v. Corning, 14 How. 193; Rubber Co. v. Goodyear, 9 Wall. 788; Adams v. Howard, 23 Blatchf. 27, 22 Fed. Rep. 656; Baldwin v. Sibley, 1 Cliff. 150. The present license contained no such words, and was purely a personal license to the complainant. Consequently the receiver could not acquire it.

If the owner of the legal title to the patent had not been made a party to the suit, undoubtedly the bill by the complainant could not be sustained against the other defendants. A mere licensee cannot sue strangers who infringe. In such a case redress is obtained through or in the name of the owner of the patent. But there is no reason or authority for the proposition that a licensee who has the exclusive right to manufacture and sell a patented article cannot maintain a suit in equity against the owner of the patent, if the latter is guilty of an infringement by making or selling himself, to redress the wrong occasioned thereby, or that such a suit does not arise under the patent laws of the United States. The case of Littlefield v. Perry, 21 Wall. 205, 223, is a direct authority in favor of the right of the licensee to maintain such an action. In that case the supreme court said:

"A court of equity looks to substance, rather than form. When it has jurisdiction of the parties, it grants the appropriate relief, without regard to whether they come as plaintiff or defendant. In this case the person who should have protected the defendant against all infringements has become himself the infringer. He held the legal title to the patent in trust for his licensees. He has been faithless to his trust, and courts of equity are always open for the redress of such a wrong. This wrong is an infringement. Its redress involves a 'suit, therefore, arising under the patent laws; and of that suit the circuit court has jurisdiction."

If the licensees' rights have been infringed by the owner, and third persons confederating with the owner, there is no reason why all the infringers should not be joined as defendants. Perry v. Littlefield, 17 Blatchf. 272, 285. In such a case it is quite immaterial to the other defendants whether the owner, when made a party to the suit, is a complainant or a defendant. It suffices, so far as they are concerned, that all the parties are present who have any interest in the controversy, and that a decree will definitely determine their rights as between themselves and the owner of the patent, as well as between themselves and the complainant.

The bill in this case alleges a combination between the defendants to deprive the complainant of the benefits and advantages of his license; and the evidence shows that the license granted by Asa L. Shipman to his sons, the other defendants, was granted by him, and procured by them, for the paramount purpose of preventing the complainant from enjoying the monopoly conferred by his license. The defendants, therefore, are joint infringers. We conclude that there is no impediment, arising from the fact that the complainant is merely a licensee, to preclude him from obtaining the relief sought by his bill.

The proof of infringement of the patents is very meager, and we find no evidence in the record that the pens made by the defendants infringe any of the claims of either patent, except the first claim of patent No. 307,735. Undoubtedly the defendants, in manufacturing their pens, intended to copy the pens made by the complainant; but the record does not show whether the pens made by the complainant embodied any of the inventions of the other claims.

To sustain the defense of want of novelty the defendants have set up in their answer, and offered in evidence, a large number of patents prior in date to those of the complainant. In the absence of any expert testimony to explain these patents, or indicate what they contain tending to negative the novelty of the complainant's patents, we do not feel called upon to examine them. There may be cases in which the character of the invention has so little complexity that such expert testimony is not necessary to aid the court in understanding whether one patent, or several patents considered together, describe the devices or combination of devices which are the subject-matter of a subsequent patent; but this is not one of them.

The defendants also introduced in evidence a pamphlet entitled "An Expose of the Assumptions and Business Methods of a Dealer and Reputed Inventor," consisting of some 25 printed pages, published in 1886. This pamphlet was prepared and published by a rival pen manufacturer apparently for the purpose of discrediting the inventions of the complainant, and his personal character and business methods. The author was called as a witness for the defendants, and asked this question: "Does this pamphlet, so far as it refers to the patents which you have studied, correctly express your views respecting the same?" The witness answered: "In so far as it goes, I suppose it does. It was so intended." The pamphlet was then offered in evidence, and made an exhibit in the cause, against the objections of the complainant. The statements contained in this pamphlet are relied upon by the defendants as evidence upon the issue of novelty. We decline to consider anything contained in it as competent evidence upon this issue. The counsel for the complainant was justified in refusing, as he did, to cross-examine the witness in regard to its contents. The greater part of it was scandalous matter, entirely irrelevant to the present controversy; and he was under no obligation to undertake to read and analyze its contents to see whether it contained anything bearing upon the issue worthy of a cross-examination.

As to the defense resting upon the prior invention of Fisher, it suffices to say that no such defense is set up in the answer; and, if all that is asserted in respect to the defense is true, only the third claim of patent No. 307,735 would be defeated by it.

We conclude that the complainant is entitled to a decree for an accounting and an injunction. The decree of the circuit court is reversed, with costs, and the cause remanded to that court with directions to enter a decree for the complainant in conformity with this opinion.