### FAY v. MASON et al.

#### (Circuit Court of Appeals, Second Circuit.  December 16, 1903.)

#### No. 44.

1. PATENTS—INFRINGEMENT—IRONING MACHINES.

The Fay reissued patent, No. 11,664 (original No. 560,816), for machines for ironing the edges of collars and cuffs, and No. 678,949, to the same inventor, for improvements thereon, construed, and *held* not infringed by the machine of the Rickey patent, No. 660,277; the ironing heads of the Fay patents being circular heads, which revolve, having no equivalent in the Rickey device, which has swinging heads, with fixed eccentric axes.

2. SAME—SUIT FOR INFRINGEMENT—EXPERT TESTIMONY.

Where difficult questions of form of operation and equivalency of function between the parts of a patented machine and one alleged to infringe are involved in a suit for infringement, the complainant should give the court the benefit of expert testimony on such questions.

Appeal from the Circuit Court of the United States for the Western District of New York.

This cause comes here by appeal from a decree sustaining the validity, and ordering an injunction against infringement, of complainant's reissued patent No. 11,664, dated May 17, 1898, and patent No. 678,949, dated July 23, 1901, for machines for ironing edges of collars and cuffs.

For opinion below, see 120 Fed. 506.

A. Parker Smith, for appellants.

J. W. Ellis, for appellee.

Before LACOMBE and TOWNSEND, Circuit Judges.

TOWNSEND, Circuit Judge. The record fails to show that, prior to the alleged inventions of the patents in suit, any machine had been constructed which would smooth the rough edges of collars and cuffs. The complainant testified that, as a result of some months of inquiry and investigation throughout the United States, he "became satisfied that there was no such machine or device used; that laundrymen did not make any effort at all to get rid of said wire edge or saw edge upon collars and cuffs." He constructed such a machine. It was operative and commercially successful, and its construction is covered by the patents in suit.

Counsel for complainant accurately states the issue herein, namely, the question as to the pioneer character of the Fay invention. If the patent is not a basic one, the charge of infringement cannot be sustained.

The chief contention of the parties centers about the earlier or reissued patent, No. 11,664. It "relates to improvements upon those machines for ironing the edges of cuffs and collars in which a heated revolving cylindrical body is provided with peripheral grooves, in which the edge of the cuff or collar is to be inserted to smooth the same." Its object "is to greatly increase the convenience and facility of adjusting the edge of the collar in the groove, thus to increase the rapidity with which the work can be done." The "invention comprises an ironing-machine in which the rotating head has a peripheral groove, the lower wall of which is wider than the upper wall, and projects to form a stop, rest, and guide for catching the cuff or collar, and guiding the edge thereof into the groove."

The rotating head is further described as follows:

"The improved rotating smoothing-head which I have invented is conical, and stepped upon its upper face, and has around each of the steps a peripheral groove, the lower wall of which is on a line with the next lower step."

Of the first four claims alleged to infringe, claim 2 is said to be most clearly reproduced in defendants' construction. Said claim is as follows:

"(2) An ironing-machine having a rotatable head, a circular groove in the head, and a guide on the same plane as a side of the groove, forming a projecting wall to the latter, substantially as set forth."

The only evidence furnished as to the prior art consisted in the introduction by defendant, without explanation, of the German patents to Senkbeil and Gantenberg for polishing the edges of collars and cuffs, and United States patent No. 557,766, to Burges, not necessary to be discussed, for a collar-creasing machine.

The Senkbeil patent shows a stationary iron head having several circular grooves, adapted to different thicknesses of collars, through which the collars may be drawn by hand. The Gantenberg patent shows a revolving cylinder with two grooves of different sizes, for

collars of differing thicknesses. The only criticism of the Senkbeil patent by complainant's experts is as follows:

"The surface being a long, straight groove, you could not bring the irregular shape of collars in contact with the groove; and the grooves are all made of fixed width, which would only take an article of even thickness, and no collars are of an even thickness at all points."

The Gantenberg patent is said to be impracticable, for the second reason stated above. But in this regard the reissued patent is at least equally open to the same objection, for, while the German patents suggest and show different thicknesses of grooves for different thicknesses of linen, all the grooves of the reissued patent are shown as of equal widths.

Both of complainant's witnesses agree in the following testimony:

"X–Q. 15. Would it require more than mechanical skill to mount the drum, c, shown in the Gantenberg patent, in a lathe, and cut therein grooves of the same cross-section shown in the various figures of the drawings of the Senkbeil patent? A. No; it would not."

Such a machine would embody the construction of the reissued patent, except the widening of the lower step to serve as a guide.

Complainant attempts to avoid the effect of this evidence by the contention that "the invention lay in the discovery that a guide to the groove was what was necessary," and "that was the discovery underlying the Fay invention." But there is not a word of testimony on the part of complainant's experts to show that the German patents were impracticable for this reason. And his expert, Leary, referring to the drawings of the Gantenberg patent, makes the following admission on this point:

"If the groove was wide enough, so that the article being ironed could be made to touch on one wall only, it would then form a guide to the groove."

This evidence disposes of the complainant's reissued patent, and shows in what his mere improvement on the prior art consisted. The prior art sufficiently disclosed the principle and mode of operation of such machines. His only contribution thereto consisted in a widening of the circular groove so as to make a better finish, and of one of its walls so as to make a better guide for the collar. The patentee says:

"The necessity of having a guide which is a continuation of the groove is to avoid forming a rough portion at the corners of the article to be ironed. The article ironed in this way forms such a perfect finish of the edge that there is no apparent space between the surfaces which are ironed by the two machines, namely, the large collar and cuff ironer and the edge ironer."

The reissued patent is thus brought within the rule that:

"A mere carrying forward * * * of the original thought, or a change only in form, proportions, or degree, the substitution of equivalents doing substantially the same thing in the same way by substantially the same means, with better results, is not such invention as will sustain a patent." Smith v. Nichols, 21 Wall. 112, 119, 22 L. Ed. 566; Burt v. Evory, 133 U. S. 349, 358, 10 Sup. Ct. 397, 33 L. Ed. 647.

In order that a person shall be entitled to a patent, "it is not enough that the thing shall be new, in the sense that in the shape or form in which it is produced it shall not have been before known, and that it

shall be useful, but it must amount to an invention or discovery." Hill v. Wooster, 132 U. S. 693, 701, 10 Sup. Ct. 231, 33 L. Ed. 502.

In this case the patentee has testified, as already shown, that "laundrymen did not make any effort at all to get rid of said wire edge or saw edge." He was satisfied that such a machine would meet with a market, and he constructed one. As soon as the want was apparent, he supplied that obvious want by what confessedly amounted only to the ordinary skill of a mechanic. Hollister v. Benedict, 113 U. S. 59, 5 Sup. Ct. 717, 28 L. Ed. 901.

The following copies of the drawings of the reissued patent show its construction:

FIG. 1.

FIG. 2.

A, is the cone-shaped revolving circular head; a, a, a, are the grooves into which the edge of the collar is to be inserted to be ironed; "the lower wall, b, of each groove projects to form a step, rest, or guide for the cuff or collar to be smoothed," the discovery for the necessity of which is the foundation of the Fay invention.

The defendant's machine is covered by letters patent No. 660,277, granted to W. H. Rickey October 23, 1900. Its construction is best shown by the following copy of Fig. 1 of the drawings of the patent:

a, a, a, are ironing heads mounted and swinging on pivots, b, b, b; d, d, are weights swinging on fulcrums, and thus controlling the backward and forward movements of the heads; i, i, i, are the grooves in the face of the heads. The heads are not cone-shaped. They are not rotatable, except as they swing on the pivot or eccentric axis when the collar is pressed into the grooves. The grooves are not circular, but are elliptical or oblong. The only guide claimed to correspond to com-

plainant's guide is the upper edge or side of the groove in the ironing head.

. But the question of infringement does not depend upon differences of form alone, but of function. Complainant's expert, Leary, testifies as follows:

"X–Q. 58. The rotation of the head [in the reissued patent] is to increase the amount of travel of the ironing surfaces relatively to the edge of the collar, is it? A. That is my interpretation of it. X–Q. 59. In the defendant's mechanism the object of the swinging motion of the head is to allow it to adjust itself to any irregularities or curvatures in the edge of the collar, is it not? A. I believe it is. X–Q. 60. Consequently the swinging motion of the defendant's head and the rotating motion of the head in the reissued patent are for entirely different purposes, are they not? A. I should say the intention of the movement was for a different purpose. * * * X–Q. 62. Suppose we take out the pin which holds the head on defendant's mechanism in place, and assume the head to be mounted on a guide at right angles to the line of travel of the collar, so limited as to move back and forth about a quarter of an inch toward and from the collar; would not that produce practically the same result as the present swinging action of the head? A. It may be possible, with the display of some little ingenuity, that a construction of this kind might be made to do the work, but it is not here shown. X–Q. 63. In the construction shown in the reissued patent, is there any yielding action in the ironing head to and from the collar? A. I do not see any yielding action to the head in the said patent."

It is necessary that the groove on the revolving head should be circular, as shown in the drawings and claimed, because otherwise it would not discharge its ironing function and would be inoperative.

"If the invention claimed be itself but an improvement on a known machine by a mere change of form or combination of parts, the patentee cannot treat another as an infringer who has improved the original machine by use of a different form or combination performing the same function. McCormick v. Talcott, 20 How. 405 [15 L. Ed. 930]." Burr v. Duryee, 1 Wall. 531, 17 L. Ed. 650, 660, 661; Railway Company v. Sayles, 97 U. S. 554, 24 L. Ed. 1053.

In this case it is admitted that, by reason of the different shapes of the grooves, they necessarily discharge their functions differently, and, as we shall hereafter see in discussing the second patent, that they are not interchangeable.

It is not claimed that the second patent in suit is a basic patent. The patentee testifies that his reissued patent was a success, and that the second patent was for an improvement thereon. It covers a complicated machine, illustrated by 9 drawings, with about 3 pages of specifications, and has 37 claims. The complainant has vouchsafed no explanation of the construction or operation of this patent, other than that he finds the elements and combinations covered by said claims in defendant's machine; that defendant's yielding head accomplishes practically the same results and is a mechanical equivalent of that claimed in plaintiff's patent; "that he never put upon the market a machine exactly such as is described in said patent," but that his commercial collar and cuff edger "contains all or substantially all of the elements in those patents"; and that "defendant's machine is mechanically substantially the same, as far as the elements contained in it are

concerned, as the devices that are described by the elements claimed in the two aforesaid patents." With the exception of a discussion of some of the phraseology of claim 33, this is all the material evidence as to this patent in the record.

The defendant has introduced no testimony. The court has thus been left to investigate this patent by an independent study of its claims in the light of the drawings and specifications. Its general construction is shown by the following copy of Fig. 3:

FIG. III.

The groove in which the collar edge is to be inserted, as shown at 45 in the drawing, is pointed or substantially V-shaped, which defendant asserts is an impracticable shape; but this may perhaps be disregarded as an immaterial part of this later patent, especially as other parts of the combinations are adapted to be used in connection with the reissued patent. In complainant's commercial machine the successive heads are provided with reversely arranged grooves. In the patent all the grooves appear to be arranged alike, with horizontal lower walls and inclined upper walls. It would appear, from the admissions of complainant's expert, that this change of the construction from that shown in the patent was necessary to its operativeness. He says, referring to the cutting away of opposite lower and upper walls in the commercial machine, as follows:

"The fundamental principle in the heads of this machine is that the upper and lower walls which form the guides to the groove must not come in fric-

tional contact at the same time with the article to be ironed, as, if this were the case, it would cause the article to be thrown away or held out from the groove or ironing portion."

This construction is nowhere referred to in said second patent. We are therefore left in doubt as to whether the invention as described and claimed in said patent covered an operative device. But if this doubt be resolved in favor of the patent, by reason of the grant we are confronted by unexplained questions as to infringement.

The patent describes and shows pairs of revolving circular ironing heads, 43, provided with grooves, 45, and mounted on shafts, 37, carried by the S-shaped swinging arms, 33, and so arranged as to constitute central axes and yielding supports:

"As the article is fed between the first pair of the movable heads, 43, they gradually travel backward in the curved orifices, 44, the article meanwhile traveling forward, and the ironing-heads ironing the outer edges or top and bottom of the collar or cuff; the collar or cuff proceeding to the next pair of heads, where the operation is repeated. * * * The action of the heads, 43, will tend to carry the collar or cuff through between the ironing-heads without any auxiliary feeding device; but I have provided a series of feeding-rollers, 68."

The second claim, which is chiefly relied on to support the charge of infringement, is as follows:

"(2) An ironing-machine comprising two or more grooved circular heads adapted to iron the edge of a starched collar or cuff, and yielding supports for the heads, whereby the latter are permitted to follow the outline of said edge as the article bears thereon, substantially as described."

But as already shown, the defendant does not and could not use a circular head. If its irregularly shaped heads could be so arranged as to revolve, they would crush and ruin the edge of the article. The heads swing back on fixed eccentric axes, which are their supports, and which do not yield.

Whether the second patent covers a mere adaptation to collar and cuff edgers of similar yielding rotating circular heads in other arts does not appear, and therefore the test to be applied to defendant's machine as to equivalency is uncertain. But in view of the fact already discussed in the consideration of the reissued patent, that said head must be circular if it revolves, and must revolve in order to discharge its functions; that its function is entirely distinct from that of the noncircular head; and because it appears from said second patent, as already shown, that the revolving heads carry the collar or cuff along, while no such effect is produced by the action of defendant's heads; and because it does not appear that the sidewise swinging of defendant's noncircular head, as distinguished from a direct backward movement, is essential to the performance of its peculiar function, namely, that of adjusting itself to the collar edge; and because its supports are not yielding, but rigid; and because the one type of head could not be substituted for the other—we think it is sufficiently shown that the differences of form are functional and substantial, and that the doctrine of equivalents does not apply, whatever may be the status

of said second patent. "The specific device described in and covered by the Wright patent could not be used in the appellant's combination, nor the appellant's spring in the appellee's combination. This interchangeability or noninterchangeability is an important test in determining the question of infringement." Miller v. Eagle Mfg. Co., 151 U. S. 186, 14 Sup. Ct. 310, 38 L. Ed. 121; Pittsburg Meter Co. v. Pittsburg Supply Co., 109 Fed. 651, 48 C. C. A. 580.

We do not question the rule which permits a complainant to introduce a patent whose mechanical details are simple, and where the issue of infringement is sharply defined, without burdening the court with useless expert testimony. But this rule has no application to a case like this, where the operative construction embodies only a portion of the two patents in suit; where material and difficult questions of form, of operation, and of equivalency of function are involved; where the validity of a reissue is challenged on the ground that the reissued patent is for a different invention; and where the 39 claims of one of the patents are projected before the court without any attempt to analyze them, or read them upon defendant's patent or commercial machine. Waterman v. Shipman, 55 Fed. 982, 5 C. C. A. 371.

The decree is reversed, with costs.