MALIGNANI et al. v. GERMANIA ELECTRIC LAMP CO.

(Circuit Court, D. New Jersey. April 5, 1909.)

1. PATENTS (§ 229*)—PROCESS—INFRINGEMENT.

The mere transposition of some of the steps in a patented process does not avoid infringement, where neither the principle, mode of operation, nor result is changed.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 365–369; Dec. Dig. § 229.*]

2. PATENTS (§ 328*)—INFRINGEMENT—PROCESS OF EVACUATING INCANDESCENT LAMPS.

The Malignani patent. No. 537,693, for a process of evacuating incandescent lamps, *held* infringed.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity. On final hearing.

Richard N. Dyer, and John Robert Taylor, for complainants.
W. M. Brown, for defendant.

CROSS, District Judge. A number of defenses were set up in the answer filed in this case, which, however, with the exception of that of noninfringement, were all abandoned at the hearing. Indeed, save as to the excepted defense, there was no testimony worthy of the name offered in support of any of them. The bill of complaint is founded upon letters patent No. 537,693, issued April 16, 1895, to one Arturo Malignani, for a "process of evacuating incandescent lamps." The General Electric Company is a licensee of the patentee. Infringement of the first claim only is alleged. It is as follows:

"A process for producing a vacuum in the bulbs of incandescent lamps consisting in first introducing into a tubular elongation of said bulb suitable substances capable of being gasified by heat and combining with the gases generated by the filament when brought to incandescence to form solid or liquid precipitations, then exhausting the said bulb by means of a pump and sealing the said tubular elongation up, then bringing the filament to intensive incandescence and simultaneously heating the substance in the elongation aforesaid, and finally sealing off the said elongation, in the manner and for the purpose substantially as described."

A high vacuum is a necessary feature of the process of lamp manufacture. Prior to the process disclosed by the patent in suit, there had not been known in the art any practical method of exhausting the gases from incandescent lamps other than by continuous and protracted pumping, which at the time when the patent in suit was granted, occupied about 25 minutes, in order to produce a satisfactory vacuum. The Malignani process reduced the period of time necessary for like exhaustion to a minute or less. Speaking of this process the complainants' expert says:

"After some considerable investigation during the past seven months I have been able to demonstrate that the Malignani process of incandescent lamp exhaustion, briefly stated, is due to a purely physical combination between the residual gases of the lamp bulb and the condensed vapors of suitable volatile substances, of which phosphorus is one, which are set out and broadly covered by claim 1 of the patent here in suit. This physical combination precipitates all the gases and vapors of the lamp bulb almost simul-

taneously, so that an almost perfect vacuum is obtained. It is impossible of attainment without the electrical condition of ionization of the lamp bulb, which results from the intensive incandescence of the filament. * * * As I have already stated, a rapid electro-physical absorption of gases, started in a relatively high vacuum and yielding an almost perfect vacuum, was unknown to the prior patent art and unreferred to in scientific and technical literature until Malignani had discovered this phenomenon and applied it in such a useful manner."

The uncontradicted testimony in behalf of the complainants shows that the patented process is in general use and of the greatest utility; but with this we need not be greatly concerned, since the validity of the patent is not in controversy. Testimony was offered in behalf of the defendant intended to show that between April and October, 1905, it adopted and used in its factory one process in exhausting lamps, and that after that date it adopted and used another, and that the use of the latter was continued up to the time when the testimony herein was taken. Complainants' counsel, in their brief, have in the first of three parallel columns set forth the six successive steps of claim 1 of the patent in suit, and in the second of said columns the steps in the process employed by the defendant between April and October, 1905, and lastly, in the third column, the steps in the process employed by the defendant after October, 1905. These statements are so clear, and furthermore so entirely in accord with the undisputed testimony in the case, that they are reproduced below in the order above stated, and designated as (a), (b), and (c), respectively:

(a) "(1) Introducing into the glass tubulature of the bulb a suitable substance (arsenic, sulphur, or iodine, or the like); (2) exhausting the lamp bulb by means of a pump; (3) sealing the tubulature (as by soldering the end of the tube by fusing the glass, to close off communication between the lamp and the pump); (4) bringing the filament of the lamp to intensive incandescence; (5) heating the substance in the tubulature; and (6) sealing off the tubulature from the lamp, close to the bulb, by fusing the glass."

(b) "(1) Introducing into the glass tubulature of the bulb a suitable substance (amorphous phosphorous); (2) exhausting the lamp bulb by means of a pump or pumps; (4) bringing the filament of the lamp to a high incandescence, until a blue haze appears in the bulb (intensive incandescence); (3) sealing the tubulature (as by compressing a pinch cock upon a piece of rubber tubing, into which the lamp tubulature had been inserted, to close off communication between the lamp and the pump); (5) heating the substance in the tubulature; and (6) sealing off the tubulature from the lamp, close to the bulb, by fusing the glass."

(c) "(1) Introducing into the glass tubulature of the bulb a suitable substance (red or amorphous phosphorous); (2) exhausting the lamp by means of a pump or pumps; (4) raising the filament of the lamp until a blue halo appears in the bulb (intensive incandescence); (5) heating the substance in the tubulature; (3) sealing the tubulature (as by compressing a pinch cock upon a piece of rubber tubing, into which the lamp tubulature had been inserted, to close off communication between the lamp and the pump; and (6) sealing off the tubulature from the lamp, close to the bulb, by fusing the glass."

By a comparison of the defendant's methods as thus shown with that of the patent, it appears that the process of the defendant, designated (b), followed the process of the patent, except that steps 3 and 4 of the patent were reversed, and that process (c) of the defendant, while it likewise adopted the steps of the patent, nevertheless transposed steps 3, 4, and 5 thereof, and made them 4, 5, and 3, respectively. The

testimony clearly shows that the essential feature of the patented process is the raising of the filament of the lamp to intensive incandescence in an attenuated atmosphere, at a time when the vapor of a suitable solid substance has been introduced into the bulb to effect the precipitation of its gaseous contents in order to obtain the desired vacuum. This feature is followed in both of the processes of the defendant. There is, moreover, uncontradicted expert testimony to the effect that both of its processes are substantially like the process of the patent, since they are the same in principle, mode of operation, and result.

Accepting this, then, as proven in the case, the defendant does not avoid infringement by merely transposing the steps of the process. Transposition of the various steps is, under such circumstances, mere evasion. Moreover, the testimony proves that some of the transposed steps were performed well-nigh simultaneously. Then, too, it will be noticed that no step was omitted, nor was any new one introduced; but each was used substantially as the patent intended it should be to accomplish the desired result. Cases holding infringement under circumstances like those above disclosed, are numerous; for instance, in Mowry v. Whitney, 14 Wall. 620, 20 L. Ed. 860, in considering a process patent, the court at page 648 of 14 Wall. (20 L. Ed. 860) said:

"It hardly seems necessary to resort to the opinions of experts in order to reach the conclusion that the process of the defendant is only formally different from that of Whitney, while the essential element of the two processes is the same. But the testimony of the experts examined, taken as a whole, clearly supports such a conclusion. It is true some of the witnesses testify that in their opinion the processes are different; but when they attempt to describe the difference they point out only matters which are merely formal, only variances in the mode of using the same process."

So, too, in Cochrane v. Deener, 94 U. S. 780, 787, 24 L. Ed. 139, where a patented process for bolting flour was considered, the court said:

"The forcing of the air currents upward through the screen and film of meal carried on it and against the downward fall of the meal, instead of forcing them through the bolting cloth in the same direction with the meal, is also a mere matter of form, and does not belong to the substance of the process. The substantial operation of the currents of air in both cases is to take up the light impurities and bear them away on the aggregate current through the open flue, and thus to separate them from the middlings. This, too, may be an improvement on Cochrane's method; but it is only an improvement."

Again, in Celluloid Manufacturing Co. v. American Zylonite Company et al. (C. C.) 31 Fed. 904, Mr. Justice Gray, with whom was sitting Judge Colt, considered a patent involving a process of making celluloid sheets and other plastic composition, and in delivering the opinion of the court, at page 911, said:

"The facts that the defendants apply the heat first from above and afterwards from below, while the plaintiff applies the heat first from below and afterwards from above, and that the sides of the defendants' chase or mold are not, like those of the plaintiff, made hollow for the purpose of containing steam, do not constitute any substantial difference in the process used by both parties. The case in this respect falls within the principle of the decisions

of the Supreme Court in Tilghman v. Proctor, 102 U. S. 707, 730, 26 L. Ed. 279, and of this court in Machine Co. v. Teague (C. C.) 15 Fed. 390."

See, also, in Hammerschlag Co. v. Bancroft (C. C.) 32 Fed. 585, where a process patent for waxing paper was before the court, and in the course of his opinion Judge Gresham, at page 589, said:

"One of the reasons urged against the identity of the two processes, and against infringement of the fifth claim, is that the defendant passes the paper under a roller submerged in a bath of paraffine, thus applying the wax to both surfaces of the paper, and then passing it through two squeeze rollers located over the vat. The defendant may not observe the same order in the various steps of the process that we find described in the reissued patent; but it does not follow that the processes are different because the various steps do not succeed each other in precisely the same order. The invention being for a process or an art, the inventor was not restricted to the particular means described in his patent for carrying out his process."

To the same effect are Burdon Wire & Supply Co. v. Williams (C. C.) 128 Fed. 927; Warren Featherbone Co. v. American Featherbone Co. et al. (C. C.) 133 Fed. 304; United States Mitis Co. v. Carnegie Co. (C. C.) 89 Fed. 343; Universal Brush Co. v. Sonn et al. (C. C.) 146 Fed. 517; Tilghman v. Proctor, 102 U. S. 707, 730, 26 L. Ed. 279.

The same rule has been followed in mechanical patents, where parts have been reversed or transposed. See Devlin et al. v. Paynter et al., 64 Fed. 398, 12 C. C. A. 188; Columbia Wire Co. v. Kokomo Steel & Wire Co., 143 Fed. 116, 74 C. C. A. 310; Ives et al. v. Hamilton, Executor, 92 U. S. 426, 23 L. Ed. 494; Hoyt v. Horne, 145 U. S. 302, 308, 12 Sup. Ct. 922, 36 L. Ed. 713.

It is unnecessary to add further citations. The foregoing sufficiently justify my conclusion that the defendant in this case, notwithstanding the transposition of certain steps in the patented process, as above indicated, has infringed the patent in suit.

A decree to this effect will be entered in favor of the complainants, with costs.