GENERAL ELECTRIC CO. v. GERMANIA ELECTRIC LAMP CO.

(Circuit Court, D. New Jersey. December 18, 1909.)

1. PATENTS (§ 314*)—SUITS FOR INFRINGEMENT—EVIDENCE—CONSIDERATION OF.

In a suit for infringement of a patent relating to a highly developed and technical art, the validity of which is contested, little, if any, attention will be paid to patents introduced by defendant as showing the prior art, unless they are explained and their relevancy to the patent in suit pointed out by experts.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 553; Dec. Dig. § 314.*]

2. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—PROCESS FOR EXHAUSTING LAMP GLOBES.

The Howell patent, No. 726,293, for a process for exhausting incandescent lamp globes, held valid and infringed.

In Equity. Suit by the General Electric Company against the Germania Electric Lamp Company. Decree for complainant.

Richard N. Dyer and John Robert Taylor, for complainant.

CROSS, District Judge. This is a suit in equity for an injunction and accounting. The bill sets up patent No. 726,293, issued April 28, 1903, to one John W. Howell, assignor to the complainant, and alleges infringement thereof by the defendant. The defendant answered the bill, asserting the invalidity of the patent in suit, and denying infringement. At the proper time it offered in evidence. without explanation or comment, copies of certain patents in the prior art, and some oral testimony upon the question of infringement, but was not represented at the argument, and has not submitted any brief. The evi-

dence on behalf of the complainant satisfies me that the defendant is guilty of infringing the first and second claims of the complainant's patent, which are the only ones involved. In this connection it should be added that the testimony of one who was both secretary and treasurer of the defendant, and its acting manager from its incorporation, substantially admits that the defendant, for a time at least, infringed the claims in question. Under the circumstances it is deemed unnecessary to discuss the testimony upon this point. The patent in suit is for a process for exhausting incandescent electric lamps. The specifications fully and clearly describe the process of the patent in the following language:

"My present invention relates to the manufacture of incandescent electric lamps, and particularly to the now well-known chemical processes of exhausting the bulb. These processes have come into some use, and they depend for their utility upon the fact that the ordinary mechanical or mercurial pumps are incapable, without considerable expense of time, of obtaining the necessary perfection in the vacuum which is required for any extended life of the filament. In order to save the extended treatment necessary under the pump, the chemical processes referred to have been used; they consisting in introducing within the vacuum inclosure, and generally within the same tube which is used in exhausting (and which is afterward sealed off in making the completed lamp), a chemical which will readily combine, when heated, with the remnant of gases which are released during the final incandescence of the filament in the process of manufacture. In the ordinary ways of using these processes the selected chemical is placed in the tubulature of the lamp. After the vacuum is obtained as far as desired by mechanical means, the tubulature is sealed below the chemical. The filament is then brought to intensive incandescence, and the chemical heated to drive vapors in the lamp-bulb, which by combination perfect the vacuum. The tube is then sealed above the chemical, or between it and the lamp; the superfluous portion of the tube being, as usual, cut off. The process thus outlined, is, however, open to some objections. Among others, it is found that the application of heat to the tube in the first sealing is apt to volatilize too much of the chemical, introducing too much vapor within, and tending to discolor, the bulb of the lamp. The moment of best exhaustion by the mechanical pump must also be seized to perform the first sealing off of the lamp. This, however, is a definite moment, while the sealing occupies several seconds at least. In addition, there is more or less loss from collapse of the tubes, permitting air to leak into the bulb. These objections are obviated by the improved method of exhausting which I adopt. In this I connect the lamp-bulbs, as usual, to the mechanical pump: but I employ for the purpose a piece of very thick and substanial rubber tubing, which is slipped over the pipe leading into the pump and into the end of which the lamp-tubulature is inserted after the chemical has been placed in the latter. I find this a convenient and reliable form of connection, which is capable of being closed with promptness by an ordinary pinch-cock and one which will maintain the vacuum unimpaired long enough to effect the final exhaustion of the lamp by chemical means. It is, of course, understood that so long as the connection to the pump is open it is difficult to obtain a proper vacuum in the bulb. After the connection to the pump is closed the lamp-filament is brought to incandescence, the chemical being, if necessary, also heated slightly; but, as this operation is in my process practically independent of sealing, it may be performed with some exactitude. The tube is then sealed off and the lamp is completed in the usual way."

"The essence of my invention, therefore, consists in the closing of the connection between the lamps and the pump without the use of heat, so that an excess of the chemical used to perfect the vacuum is not volatilized."

"It consists, also, in the detail of the process by which I am enabled, in addition to the advantages already pointed out, to perform the sealing operation much more expeditiously and with a saving in the amount of tube necessary under the old process."

Some 10 or 12 advantages which the method of this patent has over the prior art are disclosed in the complainant's testimony. Among them, and possibly the more important are these: The operation is more advantageously and economically performed, thus saving time and labor. There is less danger of spoiling the lamp. A considerable saving is made in the amount of glass tubing required. The closure is instantaneous and easily controlled, permitting the operator to correct any errors in judgment, which he has made, as to the best time for making the closure. It may be performed by comparatively unskilled operators, and, furthermore, as a result of this improved process there is, under like conditions, a greatly increased output of better and cheaper lamps. Under the evidence there seems to be no doubt of the utility and commercial value of the process. The patent carries with it prima facie evidence of its validity. The defendant has offered no evidence to controvert this presumption, except that it has, as already intimated, produced and offered in evidence seven patents in the prior art. It has, however, not supplemented this offer by expert or other testimony to show their relation to the art, or to the patent in suit, or attempted to make any comparison between them. The process in question relates to a highly developed and technical art, and where such is the case the rule is well established that little, if any, attention will be paid to patents alleged to form the prior art, unless they are explained and their relevancy to the patent under consideration pointed out by experts skilled in the art. It is true cases may arise where, by reason of the simple and obvious character of the patents involved, no explanation would be required. Some of the cases bearing upon this point are subjoined.

In Waterman v. Shipman et al., 55 Fed. 982, 987, 5 C. C. A. 371, 376, Judge Wallace, speaking for the Circuit Court of Appeals of the Second circuit, said:

"To sustain the defense of want of novelty the defendants have set up in their answer, and offered in evidence, a large number of patents prior in date to those of the complainant. In the absence of any expert testimony to explain these patents, or indicate what they contain tending to negative the novelty of the complainant's patents, we do not feel called upon to examine them. There may be cases in which the character of the invention has so little complexity that such expert testimony is not necessary to aid the court in understanding whether one patent, or several patents considered together, describe the devices or combination of devices which are the subject-matter of a subsequent patent; but this is not one of them."

To the same effect are Putnam et al. v. Van Hofe (C. C.) 6 Fed. 897, 902; Fay v. Mason et al., 127 Fed. 325, 333, 62 C. C. A. 159; Benbow-Brammer Mfg. Co. v. Heffron-Tanner Co. (C. C.) 144 Fed. 429; Bell v. MacKinnon, 119 Fed. 205, 79 C. C. A. 163; Stafford et al. v. Morris et al. (C. C.) 161 Fed. 113; Office Specialty Co. v. Winternight & Cornyn Mfg. Co. (C. C.) 67 Fed. 928; Charmbury v. Walden (C. C.) 141 Fed. 373.

As already stated, not only is there the presumption of validity existing in favor of this patent, but that presumption is supported and re-enforced by the opinions of experts who have examined the alleged anticipatory patents and clearly and satisfactorily distinguished between them and the patent in controversy. In view of the meager

character of the evidence offered in support of the defense, the case might well end at this point. Notwithstanding this, however, the testimony in connection with the prior art has been examined, and, in the absence of conflicting testimony, sustains the patent.

Perhaps the closest reference bearing thereon is patent No. 537,693, issued in 1895 to one Malignani, for a process for evaporating incandescent lamps. This patent was before this court in a suit brought by the patentee against the present defendant, reported in 169 Fed. 299, and the nature and character of the patent was therein sufficiently stated for present purposes. This patent, at the date of its issue, apparently represented the most advanced state of the art. The main difference between the two patents is disclosed by the following extracts from the testimony of one of the complainant's expert witnesses:

"The essence of the Howell invention consists in the closing of the connection between the lamps and the pump without the use of heat, so that an excess of chemical used to perfect the vacuum is not volatilized, and it consists, further, in the detail of the process by which the operator is enabled, in addition to the advantages above pointed out, to perform the sealing operation much more expeditiously and with saving in the amount of tubing necessary under the old process. For the purpose of his improved process Howell employs an ordinary pinch-cock, in conjunction with a thick and substantial rubber tubing, to close off the lamps from the pump, and to these as pieces of apparatus he makes no claim at all. A great advantage in the use of this device in connection with the process arises from the fact that it may be opened and closed at will, so that the time of closure may be that preferred by the operator in carrying out the process. It is, of course, obvious that Howell's invention had its origin in his appreciation and discovery of the fact that serious disadvantages of the Malignani process could be overcome and the effectiveness of the process otherwise greatly increased by making the closure without the aid of heat. The mere detail means for effecting this closure is therefore relatively unimportant."

It will be seen therefrom that Malignani, in his process, effected closure by the use of heat, while Howell, by his method, produces the same result in a more expeditious, economical, and advantageous manner without the use of heat. The advantages thus produced have already been adverted to. The simple means by which this change was wrought does not destroy the inventive character of the method. It was not self-evident to effect the closure by applying an ordinary pinch-cock to a rubber tubing where before heat, sufficient to fuse glass tubing, had been necessary. This view is supported by testimony in the case as follows:

"Furthermore, at even so late a period as that of the expiration of the Edison patent, which created the art in incandescent lighting, and which expired somewhere about 1895, it appears that rubber and similar joints made without the use of heat were regarded as unreliable and objectionable. I quote, for instance, from the work entitled 'The Incandescent Lamp and Its Manufacture,' by Gilbert S. Ram, A. I. E. E., published New York, The D. Van Nostrand Co., page 168, in the chapter entitled 'Exhausting': 'The lamps should be joined to the pump by fusion. Rubber and other joints cannot be relied on.'"

It should be added that since the argument in this case, and, indeed, after this opinion was prepared, counsel for the complainant informed me that the patent in suit was sustained in the case of General Electric Co. v. Hill-Wright Electric Co., by the Second Circuit Court of Appeals, 174 Fed. 996.

It is deemed unnecessary to consider in detail the other citations in the prior art, which has been carefully done by the complainant's expert, whose uncontroverted conclusions are satisfactory.

The complainant is entitled to a decree, with costs.