MALIGNANI et al. v. HILL-WRIGHT ELECTRIC CO.

(Circuit Court, S. D. New York. February 17, 1910.)

1. PATENTS (§ 36*)—SUIT FOR INFRINGEMENT—DEFENSES.
   Where a patent relates to a complex subject, such as one dealing with the action of vapors and gases and electro energy with their resultant phenomena, a defense of lack of invention or of limitation should be supported by expert testimony.
   [Ed. Note.—For other cases, see Patents, Dec. Dig. § 36.*]

2. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—PROCESS FOR EXHAUSTING INCANDESCENT BULBS.
   The Malignani patent, No. 537,693, for a process for producing a vacuum in the bulbs of incandescent lamps, was not anticipated, discloses patentable novelty and invention, and in view of its proved utility is entitled to a broad construction and a corresponding range of equivalents. Also held infringed.

5. PATENTS (§§ 229, 230, 231*)—INFRINGEMENT—PROCESS PATENT.
   To reverse or transpose the steps by which a patented process is carried out or to substitute a chemical substance for another which is known in the art as the equivalent, or which by its chemical action performs similar functions, does not avoid infringement.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 366–368, 369; Dec. Dig. §§ 229, 230, 231.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**4.** PATENTS (§ 132*)—TERM—EFFECT OF INTERNATIONAL CONVENTION.

Article 4 bis, inserted in the International Convention for the Protection of Industrial Property of March 20, 1883, by the additional act of convention signed at Brussels December 14, 1900, proclaimed by the President August 25, 1902, 32 Stat. 1936, as controlled and construed by Act March 3, 1903, c. 1019, 32 Stat. 1225 (U. S. Comp. St. Supp. 1909, p. 1270), "to effectuate the provisions" of such additional act of convention, did not have the effect of changing the term of an existing United States patent as fixed by statute at the time of its issuance; and such a patent granted prior to January 1, 1898, and which is limited by the provisions of Rev. St. § 4887 (U. S. Comp. St. 1901, p. 3382), to the term of a prior foreign patent, is not extended by such additional act.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 188½–191; Dec. Dig. § 132.*]

In Equity. Suit by Arturio Malignani and the General Electric Company against the Hill-Wright Electric Company. On final hearing. Decree for complainants.

Richard N. Dyer and John Robert Taylor, for complainants.

A. Parker Smith, for defendant.

William Houston Kenyon, for New York Tanning Extract Co., as amicus curiæ.

HAZEL, District Judge. The complainants, who are respectively the patentee and licensee of the patent herein involved, charge the defendant with infringement of claim 1 thereof, which letters patent No. 537,693 were granted April 16, 1895, to Arturio Malignani for process of evacuating incandescent lamps. Prior to the issuance of the patent, on February 10, 1894, an Italian patent for the same invention was granted to the patentee. Said United States patent has been sustained by the Circuit Court for the District of New Jersey (Malignani v. Germania Electric Lamp Co. [C. C.] 169 Fed. 299), and recently the Circuit Court of Appeals for this circuit sustained and found infringed the patent No. 726,293, granted to John W. Howell,[1] which covers the Malignani process, and was an improvement of the pingecock for soldering the tube. Said decisions clearly indicate the nature of the process and the state of the art. It is therefore thought unnecessary to elaborately describe the invention and its achievement. Briefly stated, the production of a very high vacuum is necessary in the manufacture of an incandescent lamp. In fact an absolute vacuum is required to keep the carbon filament at a high standard of efficiency and from being wasted or destroyed. If a small quantity of air is permitted to remain in the lamp the carbon combines quickly with the oxygen and the filament is rendered useless for the purposes of illumination. Prior to the Malignani patent in suit there was a known method—by the use of mercury pumps*—for securing a high vacuum in the lamp bulb, but the modus operandi was very slow in comparison with the method under consideration. The results attained by the mercury pump method were unsatisfactory, in that the health of the operators became impaired owing to the mercury fumes, skilled and expensive labor to exhaust the lamps was required, and there was frequent breakage of the bulbs. There were various processes practiced in the art at

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

[1] See General Electric Co. v. Hill-Wright Electric Co., 174 Fed. 996, 98 C. C. A. 566.

the date of the patent, but, according to the evidence in each instance it required in the neighborhood of 25 minutes to exhaust a lamp bulb. In this situation the Malignani process came into existence. The specification, after describing the manner in which the lamp may be connected with the vacuum pumps, and how the chemicals may be introduced to generate the desired vapors, says:

"Substances, adapted under certain circumstances to generate gases or vapors, such as arsenic, sulphuric or iodine are then introduced into the interior of the bulb A advantageously at about the center of the tube T. The gases thus generated are intended to combine with the gases generated by the filament of the lamp when brought to incandescence and form a liquid or solid precipitation."

It is proven that by the process in suit the complete evacuation or withdrawal of the air is secured within the period of a few minutes, first, by the introduction of chemicals which are put into the tubulure of the lamp and deposited in the inner side; second, using the pump for exhausting the bulb and thus securing a partial vacuum; third, securely closing the tubulure by fusing the glass and shutting off the pump; fourth, imparting to the filament by the use of electricity intensive incandescence to produce a blue haze, or so-called ionization; fifth, heating the tubulure to clear it of chemical substances; and, finally, fusing the tubulure and removing it from the pump. Such steps in the process are combined in claim 1, which reads:

"(1) A process for producing a vacuum in the bulbs of incandescent lamps consisting in first introducing into a tubular elongation of said bulb suitable substances capable of being gasified by heat and combining with the gases generated by the filament when brought to incandescence to form solid or liquid precipitations, then exhausting the said bulb by means of a pump; and sealing the said tubular elongation up; then bringing the filament to intensive incandescence and simultaneously heating the substance in the elongation aforesaid, and finally sealing off the said elongation in the manner and for the purpose substantially as described."

The essence of the process is found to exist in "the intensive incandescence of the filament in the attenuated atmosphere of the bulb at a time when the vapor of a suitable solid substance is present in the bulb, so that the precipitation of its gaseous contents is effected and the desired vacuum obtained." The usual defenses of anticipation, want of patentable novelty, and noninfringement are interposed in the answer, but the latter defense is particularly relied upon.

The prior patents in evidence do not anticipate the invention. Some of the processes were wholly useless, while others when used speedily became inoperative and impracticable. Certainly in none of them could a vacuum in a lamp be secured even approximately within the time in which it was produced by the use of the Malignani process. None of the prior patents disclosed the distinguishing feature of intense incandescence of the filament in the attenuated atmosphere of the lamp and though brought into the record to anticipate the patent in suit they have not been explained by any testimony and it is questionable whether they are entitled to much weight. All of them relate to a complex subject involving the subtleties of vapors and gases and electro energy with their resultant phenomena, and if claim 1 is in fact devoid of invention, or merely entitled to a strict construction, there

should have been introduced explanatory testimony to sustain the defense. Waterman v. Shipman, 55 Fed. 982, 5 C. C. A. 371; Fay v. Mason, 127 Fed. 325, 62 C. C. A. 159. The process possesses novelty and utility, and the patent removed the difficulties and inefficiencies of the prior art; it, having made a prominent step forward, is, I think, entitled to a broad construction with the corresponding right to invoke the doctrine of equivalents.

Does the defendant infringe the claim in controversy? It denies that its filament generates any gases; that in practice it uses phosphorus which vaporizes and unites with the oxygen remaining in the lamp; that its pump is left open until after incandescence of the filament, and generally that the steps employed by it to produce a vacuum are different from those in complainant's process and cause a different chemical reaction. If I am correct in believing that the patent is entitled to a liberal construction, it follows that a liberal use of equivalent means is permitted by which the result may be achieved, and any departure tending to evade its scope or the principle of operation will not deprive the patent of protection. The specification referring to the use of substances adapted under certain conditions to generate gases or vapors mentions arsenic, sulphuric, or iodine. The patentee, however, did not limit himself to the use only of such substances, and he was not required to specify all the known substances which might be advantageously used in the process. It is held that to reverse or transpose the steps by which a process is carried out or to substitute a chemical substance for another which is known in the art as the equivalent or which by its chemical action performs similar functions does not avoid infringement. Malignani v. Germania Electric Lamp Co., supra; Devlin v. Paynter, 64 Fed. 399, 12 C. C. A. 188; Carnegie Steel Co. v. Cambria Iron Co., 185 U. S. 403, 22 Sup. Ct. 698, 46 L. Ed. 968; General Electric Co. v. Campbell (C. C.) 137 Fed. 600. The proofs show that phosphorus (red or amorphous) is adapted to generate gases or vapors at a lower temperature than is required to fuse the substances in the tubulure, and therefore responds to the chemical element or substances mentioned in the specification. Even if defendant had been the first to use phosphorus or "paint" as an element which bettered the patentee's method, infringement could not be avoided simply on that ground. Atlantic Giant Powder Co. v. Mowbray, 2 Ban. & A. 442, Fed. Cas. No. 624; United Nickel Co. v. Pendleton (C. C.) 15 Fed. 739, 24 O. G. 704. It appears, however, that red phosphorus or "paint" has been used by complainant in its process in lieu of arsenic, sulphuric, or iodine since the grant of the patent, and that its equivalency was understood in the art. It makes no difference that such substance is placed by the defendant on the fine anchor wire inside the lamp bulb instead of in the tubulature. The patentee, as already indicated, is not confined to his specific means. Importance is attached to the testimony indicating that in defendant's process the pump connected with the lamp is not shut off to keep air from reentering the lamp until after the exhaustion is completed. This difference in operation, however, cannot avail the defendant, as the period of closing the pump valves is not regarded as an essential step in the Malignani process. In my mind it is immaterial whether the

pump used by defendant was disconnected before or after precipitation of the gases. It is true, the patent specifies closing the lamp from the pump before precipitation, but, as stated by complainant's expert witness, the pump used by the defendant might have operated automatically as a closure, shutting off connection between the lamp and the pump after the desired exhaustion had been secured. It is not necessary to analyze the other steps taken by the defendant to completely exhaust the incandescent lamps. I have ascertained about them, and believe they are the equivalent of complainant's, and that the defendant substantially uses all the steps and none other by which the result of the Malignani process is achieved.

The defendant criticises the prima facie showing of infringement, and argues that the court should not credit it as it is claimed to be impossible for any one to say that the cause of a phenomenon is ascertainable merely from ionic action. The answer is that three competent witnesses have substantially testified that while they cannot state definitely as to the cause of the precipitation or in what manner the phosphorus combines with the gases or vapors, yet in their judgment the use of phosphate in connection with the various steps of the patent produce the desired functional result. Under these circumstances it may fairly be presumed that there was no essential difference between the two methods. If the steps employed by the defendant were based upon a different principle it should have been proven.

The next question which has arisen since the argument is whether the patent in suit remains in full force for the entire term of 17 years, as provided by section 23 of the patent act of 1870 (Act July 8, 1870, c. 230, 16 Stat. 201), or whether it expired with the prior foreign patent pursuant to section 4887, Rev. St. (U. S. Comp. St. 1901, p. 3382). The Circuit Court of Appeals for the Third Circuit has recently in Hennebique Construction Company v. Myers, 172 Fed. 869, considered this question, and reached the conclusion that article 4 bis provided by the International Convention for the Protection of Industrial Property of December 14, 1900, at Brussells, and which was ratified by the United States Senate March 7, 1901, proclaimed by the President to take effect on September 14, 1902, was self-executory; that the declaration of interdependence of foreign and domestic patents was by such article 4 bis completely abrogated, and the statutory limitations imposed on the term of domestic patents for inventions theretofore patented in foreign countries superseded. It was further held by Judge Archbald in his opinion that article 4 bis was not subsequently repealed by implication by the act of Congress of March 3, 1903, c. 1019, 32 Stat. 1225 (U. S. Comp. St. Supp. 1909, p. 1270). The effect of the decision in the Hennebique Case, if followed by this court, would be that the patent in suit, which supposedly has expired, in reality remains valid and enforceable for 17 years from April 16, 1895, and is wholly unaffected by the prior Italian patent or the term for which it was limited. A careful perusal of the opinions written by Judges Gray, Buffington, and Archbald indicates that the holding of Judge Archbald, in which Judge Gray concurred, was not actually necessary to a decision of the case, and in view of his later remarks in Union Typewriter Co. v. L. C. Smith & Bros. (C. C.) 173 Fed. 288,

wherein he states that his opinion upon this subject was not the opinion of the court, I do not feel bound to follow it.   Moreover, I am persuaded by the additional briefs submitted by counsel bearing upon this question since the Hennebique decision was reported that article 4 bis, or the treaty, is not entitled to receive the construction given it.   The article or treaty and the subsequent act of Congress of March 3, 1903, to effectuate the provisions of the additional acts of the convention have heretofore been passed upon and construed by the Circuit Court of Appeals for the First Circuit.   United Shoe Co. v. Duplessis Shoe Co., 155 Fed. 842, 84 C. C. A. 76.   In that case it was unqualifiedly held that the act of March 3, 1903, did not alter or vary the terms of an existing United States patent as established by law at the time the patent was granted; that Congress by its enactment had declared by implication that article 4 bis of the treaty was without retroactive effect.   I concur with the reasoning and conclusions of Judge Putnam, who wrote the opinion, and therefore it follows that the patent in suit has expired because of the expiration of the prior Italian patent for the same invention.

A decree may be entered, with costs in favor of complainant, holding claim 1 infringed by the process employed by the defendant, and for an accounting.